UNITED STATES, Appellee,

v.

Ramon Alfredo ABREU, a/k/a Carlos Juan, Defendant, Appellant.

No. 91–1010.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1991.

Decided Jan. 3, 1992.

William G. Small, for appellant.

Kenneth P. Madden, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, for appellee.

Before CAMPBELL, Circuit Judge, BROWN * and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

Defendant-appellant Ramon Abreu (Abreu) appeals his conviction on charges of conducting a continuing criminal enterprise, conspiracy to distribute cocaine, possession with intent to distribute cocaine, and related firearm possession charges.

## I. BACKGROUND

We summarize the facts in the traditional fashion, taking the evidence in a light most favorable to the prosecution. *United States v. Ortiz–Alarcon*, 917 F.2d 651, 653 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2035, 114 L.Ed.2d 120 (1991); *United States v. Jimenez–Perez*, 869 F.2d 9, 10 (1st Cir.1989).

From September 1989 through February 1990, federal, state and local law enforcement agents investigated a cocaine traf-

* Of the Fifth Circuit, sitting by designation.

ficking ring in Woonsocket, Rhode Island. As part of the investigation, Detective Omar Frappier (Frappier) of the Woonsocket Police Department worked undercover as a real estate agent renting apartments. The police were assisted by Willie Wilson (Wilson), a police informant, and by Pedro Martel (Martel), an hireling of Abreu who had begun cooperating with the police in January 1990.

Defendant headed an organization that sold cocaine from several apartments in various neighborhoods of Woonsocket that had been modified to facilitate drug trafficking. There were features common to each of the apartments. Each had entrance doors with removable crossbeams mounted on them. The doors had small holes for the exchange of drugs for money. In addition, the toilets in each of the apartments had been ground out so that no water could be held in the basin. The altered toilets provided a more efficient means of disposing of drugs in case of a police raid. The apartments contained only a few chairs and a table, but no beds. All of the apartments were rented under various fictitious names and were paid for in cash.

*The Chestnut Street Apartment*

On September 15, 1989, Detective Frappier rented the third floor apartment at 89 Chestnut Street in Woonsocket to Martel. Martel used a fictitious name to rent the apartment. Wilson and defendant were also present. Defendant did not speak with Detective Frappier, but he did give Martel $500 in cash for rent for the apartment.

Martel helped defendant barricade and reinforce the entrance doors of the Chestnut Street apartment. Approximately a week after the rental, Martel observed that the bottom of the toilet had been chiseled out. Shortly thereafter, Martel and others worked at the apartment selling half-gram bags of cocaine through a hole in the apartment door for forty dollars each. The cocaine sellers were paid $100 each for a

twelve hour shift and generally worked in groups of two. At the end of each shift, defendant or William Feliz–Acosta[1] would return to the apartment to settle the accounts. Martel said that the cocaine sales ranged from $800 to $1,500 each night. At the end of each night Martel would turn over all of the money to defendant or Feliz–Acosta.

Wilson testified that he purchased cocaine for personal use from the Chestnut Street apartment several times during the fall of 1989. On October 25, 1989, Detective Edward Roy of the Woonsocket Police Department made an undercover purchase of a half-gram of cocaine for forty dollars through the hole in the Chestnut Street apartment door. He never saw who sold him the cocaine.

During the period from September 22 through October 6, 1989, Frappier collected rent for the Chestnut Street apartment from Martel or his girlfriend, Maria Vaz. Thereafter, defendant paid the Chestnut Street rent to Frappier until November 28, 1989, when defendant closed the Chestnut Street operation. Frappier inspected the Chestnut Street apartment on December 5, 1989, the day after defendant returned the keys to him. Frappier observed that the apartment door had been barricaded, that a hole had been cut through the bottom of the door and that the toilet basin had been drilled out.

*The Third Avenue Apartment*

On October 30, 1989, defendant rented an apartment at 391 Third Avenue in Woonsocket from Detective Frappier. He used a fictitious name to rent the apartment and paid Frappier $800 in cash. He was accompanied by Wilson. On November 20, 1989, defendant paid Frappier $1,100 in cash as rental payments for the Chestnut Street and Third Avenue apartments. Frappier issued receipts under two fictitious names at the request of defendant. During this November 20 meeting Frappier asked defendant for some cocaine for his personal use. Defendant instructed Frappier and

---

1. Feliz–Acosta was initially a co-defendant in this case. He pled guilty to various counts and was subsequently sentenced.

Wilson to follow him to a dwelling at 34 Miller Lane in Woonsocket. At defendant's direction, Frappier waited outside and Wilson went into the apartment with defendant. Defendant emerged from the apartment with four half-gram bags of cocaine. He gave these bags to Wilson and directed him to give them to Frappier free of charge.

*The Miller Lane Apartment*

In the fall or early winter of 1989, Martel rented an apartment at 43 Miller Lane in Woonsocket. He barricaded and cut holes in the apartment's entrance door and also chiseled out the toilet bowl. Martel initially rented the apartment for someone else, but the deal fell through. He then transferred the apartment to defendant for $1,500. On February 1, 1990, Special Agent Russell C. Holske, Jr. (Holske) of the Drug Enforcement Administration (DEA) bought a forty dollar bag of cocaine through a hole in the entrance door of the Miller Lane apartment. He was assisted by Martel, who by that time had become a paid informant.

*The Fourth Avenue Apartment*

On November 28, 1989, defendant and Feliz–Acosta rented an apartment at 136 Fourth Avenue in Woonsocket from Detective Frappier. This apartment is located within 175 feet of a public elementary school. Feliz–Acosta signed the rental lease using a fictitious name and took possession of the keys. Rental payments were made at different times by either Feliz–Acosta or defendant. Wilson was present when this transaction took place. Alterations, similar to those in the other apartments rented by defendant's operations, were made to the entrance door and the toilet bowl. Here, too, there was almost no furniture in the apartment.

Detective Frappier met with defendant on January 18, 1990, for the purpose of collecting rents for the Third and Fourth Avenue apartments. During the meeting Frappier questioned defendant about the chiseled-out toilet at Chestnut Street. Defendant told Frappier that it was an easy way to dispose of drugs during a police raid. Defendant also told Frappier that he had five or six people working for him. Frappier then asked defendant for two bags of cocaine. Defendant made a telephone call to Feliz–Acosta, who later arrived with cash and two bags of cocaine, which he gave to defendant. Defendant then paid Frappier $840 in cash as rental payments for the Third and Fourth Avenue apartments and also gave Frappier the two bags of cocaine.

Defendant and Frappier met again on January 24, 1990. Frappier asked defendant for two additional bags of cocaine. Defendant left Frappier and was observed by surveillance officers entering and leaving the dwelling at 136 Fourth Avenue. Defendant returned with two bags of cocaine which he gave to Frappier.

On February 1, 1990, Special Agent Holske of the DEA, with the assistance of Martel, made an undercover purchase of a forty dollar bag of cocaine through a hole in the entrance door at the 136 Fourth Avenue apartment.

*Guns for Drugs*

On January 16, 1990, Special Agent Matthew Horace (Horace) of the Bureau of Alcohol, Tobacco and Firearms (BATF) and Special Agent Robert Botelho (Botelho) of the DEA met with defendant and Feliz–Acosta in Woonsocket. Posing as gun dealers, the agents attempted to sell firearms to defendant in exchange for cocaine. Defendant sought to purchase pistols to send back to the Dominican Republic. He told the agents that he already had a sawed-off shotgun and several other firearms for the protection of the six or seven people who worked for him. On February 11, 1990, the undercover agents again met with defendant. An agreement was reached whereby defendant was to exchange one ounce of cocaine, valued at approximately $1,500, for each pistol the agent provided; no sales were ever consummated from this deal.

On other occasions defendant bought and used firearms in his cocaine business. In the summer of 1979, Martel sold him a .357 caliber handgun. During that summer Martel also saw defendant in possession of .22 caliber semiautomatic and .38 caliber

handguns. Defendant gave the .22 caliber gun to his workers to use as protection. In the fall of 1979, defendant held a sawed-off shotgun to Wilson's face when the two argued about money in connection with drug sales and purchases by Wilson. Wilson also saw a .38 caliber handgun in defendant's Social Street apartment and a .45 caliber firearm on his person.

*The Searches*

On February 6, 1990, federal agents executed search warrants at the Third Avenue, Fourth Avenue and Miller Lane apartments. Inside the Third Avenue apartment, DEA Agent Lisa Farrell seized a plastic bag containing approximately fifty grams of 92% pure cocaine; three kilogram size wrappers used for packaging cocaine, each containing cocaine residue; a triple beam scale; and other paraphernalia used in cocaine packaging and distribution. Special Agent Brian Glynn of the BATF seized five firearms and ammunition: a shotgun and four loose shotgun rounds, two .45 caliber semiautomatic pistols one of which was loaded, a loaded .22 caliber semiautomatic pistol, and a .357 caliber revolver. The shotgun was not registered to either defendant or Feliz–Acosta in the National Firearms Registration and Transfer Record in Washington, D.C. Defendant's palmprint was later lifted off the shotgun seized from the Third Avenue apartment.

No cocaine was found in the Fourth Avenue or Miller Lane apartments. William Borges was arrested at the Fourth Avenue apartment and Hoscar Florian Medina was arrested at the Miller Lane apartment. A loaded Beretta was seized from the Miller Lane apartment.

On February 6, 1990, Feliz–Acosta and defendant were arrested in an apartment which they jointly occupied on Social Street in Woonsocket. Feliz–Acosta had the keys for the Third Avenue, Fourth Avenue and Miller Lane apartments. Both Feliz–Acosta and defendant had keys for the Social Street apartment. Agents searched the Social Street apartment and found over $25,000 in cash and a .38 caliber revolver in defendant's bedroom.

*The Charges*

Defendant and three co-defendants, Hoscar Florian Medina, William Feliz–Acosta and Wilman Borges, were indicted by a grand jury. Defendant was charged with the following fifteen counts: Count I, conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848; Count II, conspiracy to distribute cocaine in violation of 21 U.S.C. § 846; Counts III, IV, V, X, XII, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); Counts VI, IX, & XI, knowingly and intentionally opening and maintaining a place for the purpose of distributing cocaine in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2; Count VII, opening and maintaining a place within a 1,000 feet of a public school for the purpose of distributing cocaine in violation of 21 U.S.C. §§ 856 and 845a and 18 U.S.C. § 2; Count VIII, distribution of cocaine within 1,000 feet of a public school in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and § 845a and 18 U.S.C. § 2; Counts XIII & XV, using a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and Count XIV, possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871.

The three co-defendants entered pleas of guilty to various counts on June 25, 1990, and were sentenced subsequently. Defendant was tried by a jury and was convicted on all counts except Counts IX and XV. He was sentenced to a total of twenty-eight years imprisonment, six years of supervised release and the costs of supervised release. The defendant appeals his conviction on several grounds. We affirm the convictions on all counts, except for the conviction on Count II.

## II. DISCUSSION

Defendant raises seven claims on appeal: (1) that his imposed sentence violates the Double Jeopardy Clause on several different counts; (2) that there was insufficient evidence to sustain a conviction for carrying and using firearms during and in relation to drug trafficking offenses; (3) that the district court erred by admitting into evidence the sawed-off shotgun and the inked palmprints without the proper foundation; (4) that the district court erred in

denying his motion for a bill of particulars; (5) that the trial judge interfered with the defendant's presentation of his theory of a defense; (6) that the prosecutor engaged in prosecutorial misconduct and the trial judge engaged in judicial misconduct; and (7) that the district court erred in admitting the cocaine purchased by Special Agent Holske.[2]

**1. Double Jeopardy**

■ The Double Jeopardy Clause mandates that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. It embodies three distinct safeguards for one accused of a crime. First, it protects against a second prosecution for the same offense after acquittal. Second, it protects against a second prosecution for the same offense after conviction. Third, it protects against multiple punishments for the same offense. *Jones v. Thomas,* 491 U.S. 376, 380–81, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1988).

■ Appellant first argues that his conviction and sentence on Counts VII and VIII violated the protection against multiple punishments embodied in the Double Jeopardy Clause. He contends that the convictions punished him for the same underlying conduct.

Count VII charged the defendant with opening and maintaining an apartment on Fourth Avenue in Woonsocket within 1,000 feet of the real property of a public school for the purpose of using and distributing cocaine in violation of 21 U.S.C. § 856 and § 845a and 18 U.S.C. § 2. Count VIII charged defendant with distributing cocaine within 1,000 feet of the real property of a public school in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and § 845a and 18 U.S.C. § 2. Defendant argues that both charges constitute the same offense. Therefore, he contends that his conviction and sentencing under Count VII should merge with Count VIII. We disagree.

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court set forth the applicable standard for determination of whether multiple sentences for overlapping sentences violate the Double Jeopardy Clause:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. *See also United States v. Rivera–Feliciano,* 930 F.2d 951, 953 (1st Cir.1991); *Ortiz–Alarcon,* 917 F.2d at 653.

In this case Count VII and Count VIII require proof of separate facts. Count VII charged defendant with violating 21 U.S.C. § 856 [3] and § 845a [4] by opening and maintaining a place within 1,000 feet of a public school for the purpose of distributing cocaine. To convict defendant under Count VII required proof that he opened and maintained a distribution center for the sale of cocaine. Count VIII charged Abreu with violating 21 U.S.C. § 845a, § 841(a)(1) [5] and § 841(b)(1)(C) [6] by distrib-

---

**2.** Defendant raises an eighth claim in a supplemental brief; that his rights were violated because the government used paid informers as witnesses. Because the claim was not raised below and, in any event is without merit, we do not address it.

**3.** 21 U.S.C. § 856(a) provides in pertinent part: "Except as authorized by this title it shall be unlawful to (1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance."

**4.** 21 U.S.C. § 860 (formerly § 845a) provides in pertinent part:

Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufac-

turing a controlled substance in or on, or within one thousand feet of, the real property comprising a public ... elementary ... school is subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by Section 841(b) of this title for a first offense.

**5.** 21 U.S.C. § 841(a) provides: "Except as authorized ... it shall be unlawful for any person knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

**6.** 21 U.S.C. § 841(b)(1)(C) provides that a person found guilty under § 841(a)(1) "shall be

uting cocaine within 1,000 feet of a public school. To convict defendant under Count VIII required proof that he distributed cocaine. Thus, while conviction under Count VII required proof that defendant maintained a distribution center, Count VIII required proof of actual distribution of cocaine. These are separate facts to be proven; this satisfies the *Blockburger* test for distinctive offenses. Therefore, we find that the convictions under Count VII and Count VIII do not violate the Double Jeopardy Clause.

■ Defendant next contends that Counts II through VI, Count VIII, Count X and and Count XII formed predicate offenses for Count I. Because they were lesser-included offenses, defendant claims that to be sentenced under Count I *and* any of the remaining counts violated the Double Jeopardy Clause by punishing him twice for the same conduct.

Count I, the Continuing Criminal Enterprise Count (CCE), required that the government prove beyond a reasonable doubt that the defendant:

> (1) committed a drug offense punishable as a felony; (2) as part of a continuing criminal enterprise; (3) in which the defendant committed a series of drug offenses in concert with five or more other persons with respect to whom defendant acted as a supervisor, organizer, or manager; and (4) obtained substantial income or resources from the drug violations.

*United States v. Newton,* 891 F.2d 944, 951 (1st Cir.1989).

Count I charged defendant as follows: that he committed a drug offense punishable as a felony as part of a continuing criminal enterprise; that he committed a series of drug offenses including those charged in Counts II through XVI; that such violations were undertaken by defendant in concert with at least five other persons and that defendant occupied the

position of organizer, supervisor or manager; and that he obtained substantial income or resources from these violations.

We address only defendant's claim as to Counts III through VI, Count VIII, Count X and Count XII. The government has correctly conceded that a defendant may not be convicted under both Count I, conducting a continuing criminal enterprise, and Count II, conspiracy, because a conspiracy charge may not serve as both a predicate offense for a continuing criminal enterprise charge and a separate conviction. *See Jeffers v. United States,* 432 U.S. 137, 155, 97 S.Ct. 2207, 2218, 53 L.Ed.2d 168 (1977); *see also United States v. Rivera–Martinez,* 931 F.2d 148, 152 (1st Cir. 1991). We, therefore, vacate the conviction and sentence as to Count II.

We now address the issue of whether substantive offenses charged in Counts III through VI, Count VIII, Count X and Count XII may serve both as predicate offenses for Count I and as convictions for which punishment may be given. It is well established that a defendant may be convicted of both substantive predicate charges and a CCE charge and be sentenced for the predicate charges and the CCE charge separately. *See Garrett v. United States,* 471 U.S. 773, 793–95, 105 S.Ct. 2407, 2418–20, 85 L.Ed.2d 764 (1985) (no Double Jeopardy violation for sentences under both CCE and predicate offenses where Congress intended cumulative punishments for these separate offenses). In *Rivera–Martinez,* this court held explicitly that under *Garrett* a defendant may receive separate sentences for a CCE conviction and predicate offenses committed in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2. 931 F.2d at 150. *Rivera–Martinez* is directly controlling, and thus, we find no violation of the Double Jeopardy Clause as to Counts III through VI, Count X and Count XII.[7]

---

sentenced to a term of imprisonment of not more than 20 years...."

**7.** Counts III through V, Count VIII, Count X, and Count XII charged defendant with viola-

tions of § 841(a). Count VI charged defendant with a violation of § 856. In *Rivera–Martinez,*

### 2. Sufficiency of the Evidence on the Firearm Count

Defendant argues that we should reverse his conviction under Count XIII because of insufficiency of the evidence. Count XIII charged him with using and carrying firearms during and in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(c).[8] Defendant was convicted under § 924(c) for using and carrying a 12 gauge shotgun, two .45 caliber pistols, a .22 caliber pistol, and a .357 revolver in connection with a drug trafficking offense.

Defendant contends, as he did in his motion for judgment of acquittal, that the evidence was insufficient to establish the element of using or carrying.

In a challenge by the defendant to the sufficiency of the evidence underlying his conviction we must determine "whether, viewing the evidence and all legitimate inferences therefrom in the light most favorable to the government, a rational jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Arango–Echeberry*, 927 F.2d 35, 37 (1st Cir.1991).

■ In order to convict under 18 U.S.C. § 924(c), the government must prove that a defendant either used or carried a firearm during and in relation to a drug trafficking crime. To show that a defendant used a firearm, the government need not prove actual possession by the defendant, only that the firearm was readily accessible for the defendant's use. *United States v. Young–Bey*, 893 F.2d 178, 181 (8th Cir. 1990). Placing a weapon nearby to protect a drug operation comes within the definition of "used." *United States v. Hadfield*, 918 F.2d 987, 998 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991). Even though a weapon is never fired, if it is kept nearby by a drug dealer, it is "used" so as to satisfy the statutory requirement. *United States v. Payero*, 888 F.2d 928, 929 (1st Cir.1989).

■ In the present case, there was ample evidence to connect defendant to the weapons and to convict him under the firearm charge. The firearms were found in the Third Avenue apartment. The evidence revealed several strong links between that apartment and defendant's drug trafficking activities. Defendant rented the Third Avenue apartment from Detective Frappier and made several rental payments. When the apartment was searched by federal agents, a significant amount of cocaine, cocaine packaging and distribution devices were found. Five firearms, two .45 caliber pistols, a shotgun, a .22 caliber pistol, and a .356 caliber revolver also were seized.

Other evidence connected defendant to the firearms seized at Third Avenue. Federal agents testified that while they were negotiating undercover firearm deals with defendant, he informed them that he had a sawed-off shotgun and several other firearms. Additionally, the testimony of Martel and Wilson corroborated other evidence indicating that defendant had firearms in his possession and used them in connection with the drug trafficking operation. And to cap the testimony, defendant's palmprint was found on the shotgun.

Under these facts, it was reasonable for a fact-finder to conclude that the defendant used these firearms in connection with a drug trafficking operation. The evidence was sufficient to convict under 18 U.S.C. § 924(c).

### 3. Admission of the Sawed–Off Shotgun Into Evidence

Count XIV charged defendant with possession of one Boito double barrel 12 gauge shotgun, serial number 145266, having a barrel approximately 12¾ inches in length

---

the court found that a defendant may receive cumulative sentences for a CCE conviction and all substantive offenses. 931 F.2d at 154. Count VI, maintaining a distribution center for cocaine, is a substantive offense and thus also squarely controlled by *Rivera–Martinez*.

8. Section 924(c) states in pertinent part "[w]hoever, during and in relation to any ... drug trafficking crime ... for which he may be prosecuted in a court of the United States, *uses or carries a firearm*, shall, in addition to the punishment provided for such crime, ... be sentenced to imprisonment for five years...." 18 U.S.C. § 924(c) (emphasis added).

and an overall length of approximately 22 inches. Defendant was charged with failure to register the shotgun in the National Firearms Registration and Transfer Record, a violation under 26 U.S.C. §§ 5861(d) and 5871 and 18 U.S.C. § 2.

Although the appellant's brief is unclear, it appears that he makes three arguments in connection with the admission of the shotgun into evidence. First, he claims that the admission of the shotgun into evidence was erroneous because of foundation problems and in particular because of gaps in the chain of custody; second, he claims that a proper foundation was not laid for the admission of the inked palmprint and that of the latent palmprint lifted off the shotgun; and third, he argues that the evidence was insufficient to support a conviction for possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871 as charged in Count XIV. He raised the third issue in his Rule 29 motion.

Under the Federal Rules of Evidence, "[t]he requirement of authentication ... as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). In determining whether the evidence is admissible, the trial court "must conclude that it was reasonably probable that the evidence had not been altered since the occurrence of the crime." *United States v. Williams,* 809 F.2d 75, 89 (1st Cir.1986), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987).

■ The evidence in question is properly admitted if it is readily identifiable by a unique feature or other identifying mark. On the other hand, if the offered evidence is of the type that is not readily identifiable or is susceptible to alteration, a testimonial tracing of the chain of custody is necessary. The purpose of testimonial tracing is to render it improbable that the original item either has been exchanged with another or has been tampered with or contaminated. Edward W. Cleary et al., *McCormick on Evidence* § 212, at 668 (3d ed. 1984).

■ A trial court's rulings on relevance and admissibility of evidence are reversible only for abuse of discretion. *Newton,* 891 F.2d at 946; *United States v. Browne,* 891 F.2d 389, 392 (1st Cir.1989); *United States v. Garcia,* 818 F.2d 136, 144 (1st Cir.1987). Even though there may be gaps in the chain of custody for a certain piece of evidence, such gaps factor into the weight given to the evidence rather than its admissibility. *United States v. Ladd,* 885 F.2d 954, 956 (1st Cir.1989); *Williams,* 809 F.2d at 90; *see also United States v. Roberson,* 897 F.2d 1092, 1096 (11th Cir.1990). We hold that there was no abuse of discretion in admitting the shotgun, the inked palmprints and the latent palmprints into evidence.

■ The shotgun was seized by BATF Special Agent Brian Glynn (Glynn) during the raid of the Third Avenue apartment. During trial, he was able to identify the shotgun as the same one he seized by identifying the evidence tag which was placed on the gun at the time of its seizure and by his signature which appeared on the tag. Agent Glynn, however, inaccurately described the firearm as an "S.S. Christy" shotgun. The gun was an S.S. Kresge shotgun. He was unable to locate a serial number on the shotgun or the evidence tag. He did state, however, that the shotgun was in substantially the same condition as when he seized it.

Special Agent David Sherman of the Providence office of the BATF was involved in the investigation of the defendant's organization. After defendant's arrest and the seizure of the drugs, drug paraphernalia and firearms, Sherman measured the seized shotgun, in his Providence office. Sherman testified that the shotgun was in substantially the same condition as when he measured it and identified it as a "Boito, 12–gauge shotgun, made for S.S. Kresge Company, serial number 145266." He also testified that just prior to his measurement, it had been kept in the evidence vault. He further stated that he checked the registration of the shotgun with the Firearms Registration and Transfer record at the BATF and found that it was unregis-

tered. During his testimony, Detective Walter Williams of the Bureau of Criminal Identification of the Providence Police Department also identified the shotgun by its model and serial number.

Defendant argues that the discrepancy in Agent Glynn's named description of the gun indicated a lost gun or missing link in the chain of custody. A foundation for the identification of the gun had, however, already been laid by Agent Glynn's identification of the evidence tag which he placed on the gun. The error in Glynn's testimony was mitigated by Agent Sherman's and Detective Williams' clear identification of the gun and testimonial tracing of the chain of custody from the seizure to trial. We also note that "Christy" and "Kresge" sound alike.

The admission of the shotgun satisfied Federal Rule of Evidence 901(a). There was no abuse of discretion, and we will not disturb the trial court's ruling on this issue.

Defendant was free to argue to the jury that they could accord less weight to the shotgun because Glynn incorrectly named the gun. This, however, is a different issue than admissibility of evidence. *Williams*, 809 F.2d at 90. It is the province of the jury to decide the appropriate weight to give to specific evidence.

■■■ We now turn to defendant's argument that there was insufficient foundation for admission of the latent fingerprints from the shotgun. Detective Williams also testified that his job is to identify arrestees through fingerprints and palmprints and also to lift such prints from evidence. He described a process he performed on the shotgun to test for the presence of latent fingerprints or palmprints. He found an identifiable palmprint under the shotgun barrel. Detective Williams compared the palmprint to a card containing a palmprint which was supplied by Special Agent Horace. Williams testified that the latent palmprint and the inked impression on the card positively matched and were made by the same individual. Defendant did not object to this testimony.

Williams then stated that based on his comparisons with the inked palmprint, the palmprint was made by defendant. On defendant's objection for lack of foundation, the trial judge instructed the jury to strike from the record Williams' testimony linking the latent and the inked prints to defendant. The trial judge then admonished the prosecutor and threatened to declare a mistrial if subsequent testimony failed to link defendant to the inked impressions.

The same day, Special Agent Harris was brought on the stand to lay the foundation for the inked impression of the palmprint. Agent Harris of BATF was involved in the undercover investigation of defendant and his organization. After the arrest of defendant and his co-defendants, Agent Harris took inked palmprints of defendant, Feliz–Acosta, Hoscar Florian Medina, and Hector German at the United States Courthouse in Providence, Rhode Island. Agent Harris identified the inked impressions that were entered into evidence during Detective Williams' testimony as belonging to defendant. Harris testified that he took the palmprints and marked his signature in the lower right corner and that the card had not been changed since he last saw it. Defendant objected to the admission of the inked and latent palmprints on grounds of chain of custody. His objection was overruled and the evidence of the palmprints was admitted in full.

Defendant argues that an improper foundation was laid for the admission of the latent and inked palmprints. He stresses the lack of foundation in the testimony given by Detective Williams connecting the inked palmprints to him. The trial judge, however, expunged from the record Detective Williams' testimony on this subject and he instructed the jury not to use the evidence. Assuming, arguendo, that a foundational error was made when Williams testified regarding the identification of the inked palmprint, this error was rendered harmless when Agent Harris testified to taking the inked impressions and was able to link defendant directly to the impressions.[9] We will not disturb the trial court's

9. Defendant also seems to allege that the confu-    sion regarding the admission of the inked palm-

ruling if there is harmless error. *United States v. Pellerito*, 918 F.2d 999, 1003 (1st Cir.1990).

■ Finally, we consider defendant's argument that the evidence was insufficient to support a conviction for possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871. As previously stated, our standard of review for sufficiency of the evidence requires us to determine whether, "viewing the evidence and all legitimate inferences therefrom in the light most favorable to the government, a rational jury could have found the defendant guilty beyond a reasonable doubt." *Arango–Echeberry*, 927 F.2d at 37; *United States v. Bernal*, 884 F.2d 1518, 1523 (1st Cir.1989). In light of the evidence, we hold that the evidence was sufficient to support a conviction for possession of a sawed-off shotgun.

### 4. Denial of the Bill of Particulars

Defendant argues that the district court erred when it denied his motion for a bill of particulars because the court earlier had granted a bill of particulars requested by his co-defendant Wilman Borges.

■ The function of a bill of particulars is to provide the defendant with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against trial, and to protect against double jeopardy. *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir.1989); *United States v. Leach*, 427 F.2d 1107, 1110 (1st Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970).

■ It is well settled that the grant or denial of a motion for a bill of particulars lies within the sound discretion of the trial judge. *Paiva*, 892 F.2d at 154. A court of appeals will reverse a judgment of conviction only if the district court clearly abused its discretion in denying such a motion. *Id.* To establish that level of abuse of discretion, "a defendant must demonstrate actual surprise at trial or actual prejudice to his substantial rights." *Id.*

■ Defendant did not argue at trial or in his brief that the denial of the bill of particulars prejudiced his ability to prepare his defense, created surprise at trial, or violated his protections against double jeopardy. Instead, he claimed that it was simply unfair because the same district judge granted co-defendant Wilman Borges' motion for a bill of particulars and denied his motion. This argument has no legal basis.

Because defendant fails to make any argument that demonstrates that he was surprised or prejudiced at trial as a result of the denial of his motion for a bill of particulars we find no abuse of discretion by the trial court.

### 5. Interference with the Defendant's Presentation of a Theory of Defense

Defendant alleges that the district court judge improperly interfered with his ability to present his defense. Specifically, Abreu claims that the judge impermissibly cut off his cross-examination of Detective Frappier while he attempted to develop his theory that he was merely assisting newly admitted immigrants to find apartments in this country. Defendant further alleges that the trial court judge improperly instructed the jury by stating that only answers to questions and not the questions themselves were evidence in the case.

■ The trial court has wide latitude to impose limits on cross-examination so as to avoid prejudice or unnecessary waste. *United States v. Malik*, 928 F.2d 17, 19 (1st Cir.1991); *United States v. Perkins*, 926 F.2d 1271, 1278 (1st Cir.1991). The limits on cross-examination must, however, be reasonable. A trial court cannot, by imposing limits, prevent the presentation of essential evidence to the jury. *Malik*, 928 F.2d at 20. The trial must allow enough cross-examination so as to not violate a defendant's Sixth Amendment right of confrontation. *United States v. Kepreos*, 759 F.2d 961, 965 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

print was the result of prosecutorial misconduct. Because we find that any error in the

admission of the inked palmprint was harmless, we do not reach this issue.

In this case the trial judge did not abuse his discretion in limiting cross-examination. The defendant attempted in his cross-examination of Detective Frappier to develop his theory that the reason he rented the apartments was to aid newly admitted immigrants. At trial, defendant's counsel repeatedly asked Frappier whether defendant had ever indicated that he was attempting to find apartments for others coming into this country from the Dominican Republic. After the detective stated several times that defendant had not so indicated, the district court cut off that line of questioning.

Defendant was in no way prejudiced by the trial court's ruling. He had not developed this theory in any way prior to the cross-examination. Further, he provided no evidence to buttress this theory. In his closing argument he made no mention of his theory of the case. Moreover, it was only after repeated questioning and no affirmative response that the trial court cut off questioning. This court finds it difficult to imagine any prejudice suffered by the defendant by the district court's actions.

Defendant next contends that the trial court improperly instructed the jury during the course of his cross-examination of Detective Frappier. Defendant challenges the following portions of the court's instruction: "Now remember jurors this is an indication of what I told you in my instructions. The question is not evidence; it's the answer that is evidence." Later, after an off-the-record conference the court further warned: "I instruct you, members of the jury, to disregard those questions that were asked absent any evidence whatsoever." Defendant did not object to these instructions.

When a party does not properly preserve an objection to jury instructions, we review only for plain error. *United States v. Faulhaber*, 929 F.2d 16, 19 (1st Cir.1991). Plain error requires that it affect the "fundamental fairness of the trial." *See United States v. Vest*, 842 F.2d 1319, 1326 n. 4 (1st Cir.1988) (citation omitted). We find no such error here. These instructions were in keeping with the settled law that the evidence at trial consists solely of the testimony of witnesses and admitted exhibits. *See United States v. DeFillipo*, 590 F.2d 1228, 1239–40 (2d Cir.1979), *cert. denied*, 442 U.S. 920, 99 S.Ct. 2844, 61 L.Ed.2d 288 (1979); Edward J. Devitt & Charles B. Blackmar, 1 *Federal Jury Practice and Instructions*, § 11.13 at 309 (1977).

6. Prosecutorial and Judicial Misconduct

Defendant alleges that he was the victim of various instances of prosecutorial and judicial misconduct. Specifically, he claims that the prosecutor made improper remarks in his closing argument and that he used leading questions in direct examinations. Further, defendant alleges that the trial court judge improperly aided the government by allowing leading questions and by laying foundations for exhibits and otherwise aiding the prosecution.

Defendant objects to the following comments made during the prosecutor's closing argument:

Does he make substantial income from this venture? When you left your house this morning, did you leave $23,000 on the bed? Did you leave $2,500 in the headboard of your bed? Did you leave $500 in the kitchen drawer? Did you leave $26,000 in your apartment when you left this morning?

Defendant made no objection to this portion of the prosecutor's argument at the time of summation. He now claims on appeal that the prosecutor improperly vouched for the credibility of the evidence or alternatively, that the prosecutor inappropriately asked the jury to compare their conduct to that of the defendant.

In the absence of a contemporaneous objection to a prosecutor's remarks during closing argument we review only for plain error. *United States v. Moreno*, 947 F.2d 7, 8 (1st Cir.1991); *United States v. Mateos–Sanchez*, 864 F.2d 232, 240 (1st Cir. 1988). We will overturn a verdict only if a comment " 'so poisoned the well' that the trial's outcome was likely affected." *Mateos–Sanchez*, 864 F.2d at 240–41 (quoting

*United States v. Mejia–Lozano*, 829 F.2d 268, 274 (1st Cir.1987)).

In this case we find that the remarks in question did not constitute plain error requiring reversal. The prosecutor at no point improperly vouched for the evidence; he merely asked the jury to make reasonable inferences that defendant's lifestyle tended to indicate criminal activity. *Compare, e.g., Mejia–Lozano*, 829 F.2d at 273 (prosecutor commented that witness was a "honest U.S. government officer"); *United States v. Cresta*, 825 F.2d 538, 555 (1st Cir.1987) (prosecutor commented that an inference that defense counsel had asked the jury to make was ridiculous).

Neither did the government invoke the "golden rule" argument by encouraging the jury to depart from "neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence" and compare their behavior to that of the defendant. *Moreno*, 947 F.2d 7, 8 (citations omitted). Instead, the prosecutor simply called on the jury to employ its "collective common sense" in evaluating the evidence and to draw reasonable inferences therefrom. *Id.* at 8.

Defendant also questions the prosecutor's behavior in leading its witnesses during direct examination and the court's acquiescence in the government's behavior. After reading the record, we find no merit in this argument. Further, we note that the questions were not properly objected to in the court below.

■ Finally, defendant contends that the trial court judge acted improperly during the course of the trial by assisting the prosecution and otherwise demonstrating bias against the defendant. Specifically he objects to the district court's interjection into the examination of certain witnesses and its aid in laying foundations for exhibits. Again, after review of the record, we find this argument to have little merit. We first note that we cannot find in the record a single instance where defense counsel objected to the trial court's actions in this regard. This circuit has observed that the trial judge may explain, summarize and comment on the facts and evidence and

question witnesses. *See Paiva*, 892 F.2d at 159 (citations omitted). The trial court acted well within its discretion in its handling of the trial.

7. Admission of Cocaine Purchased by Special Agent Holske

■ Defendant argues that the district court abused its discretion by admitting into evidence the cocaine that Special Agent Holske purchased on February 1, 1990, from the Miller Lane and Fourth Avenue apartments.

We have already addressed the standard for admissibility of evidence in our discussion of the admissibility of the sawed-off shotgun. We will not disturb the trial court's ruling on relevance and admissibility of evidence unless there is an abuse of discretion. *Newton*, 891 F.2d at 946; *Browne*, 891 F.2d at 392. Here, we find no abuse of discretion in the admission of the cocaine purchased by Agent Holske.

The bags of cocaine from the Fourth Avenue and Miller Lane apartments were purchased by Agent Holske on February 1, 1990. In both instances, the cocaine that Holske bought was transported to the DEA laboratory in New York. Each bag was tagged before it went to the laboratory. Each tag contained Holske's initials as an indication that he had acquired the substance. At trial, Holske identified each bag as being a small plastic bag twisted and burned at the top. He also identified his initials on the tags attached to both bags. It was stipulated that both bags contained cocaine.

Defendant objected to the admission of the cocaine from the Fourth Avenue apartment on the ground that there was no evidence as to what had happened to the bag of cocaine once it went to the DEA laboratory. The objection was overruled. Defendant stipulated that the contents of the bag contained cocaine and Holske testified that the bag was in fact the one he purchased from Fourth Avenue.

The court was well within its discretion in admitting the bags of cocaine. There was sufficient evidence to conclude that it

was reasonably probable that the evidence had not been altered since the occurrence of the crime. *Williams*, 809 F.2d at 89. Furthermore, any gap in the chain of custody would go to the weight of the evidence, rather than its admissibility. *Id.* at 90.

Defendant did not object to the admission of the cocaine that was bought at the Miller Lane apartment. Having failed to object at trial, he cannot now raise this issue on appeal unless there was plain error in its admission. Based on the foundation laid for the admission of the cocaine, we hold that there was no plain error.

For the reasons given above, the conviction and sentence on the conspiracy charge set forth in Count II are vacated. Because the sentences were to run concurrently,[10] we see no reason to remand for resentencing. The remainder of the defendant's claims on appeal are rejected, and the convictions on the remaining counts are affirmed.

*Affirmed in part, reversed in part.*

---

10. All sentences except the one on Count XIII ran concurrently with each other. Count XIII was to be served consecutive to the sentence imposed on Count I.