# United States Court of Appeals
## For the First Circuit

No. 23-1277

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS J. REYES-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

Edgar L. Sánchez-Mercado, for appellant.

Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

June 5, 2025

BARRON, **Chief Judge**. Carlos Reyes-Rosario ("Reyes") was convicted of five federal offenses in the United States District Court for the District of Puerto Rico in connection with his role in a drug trafficking conspiracy. He then received concurrent sentences for those convictions. On appeal, he contends that one of those convictions must be reversed, or at least vacated. He also challenges his sentences for all but one of those convictions. We affirm.

## I.

In December 2017, Reyes and 43 co-conspirators were named in a six-count indictment handed up by a District of Puerto Rico grand jury. The indictment charged Reyes with (1) conspiracy to possess with intent to distribute controlled substances, including cocaine, cocaine base, heroin, and marijuana, among other controlled substances, within 1,000 feet of a protected location, under 21 U.S.C. §§ 841(a)(1), 846, and 860 (Count One); (2) possession with intent to distribute heroin within 1,000 feet of a protected location, under 21 U.S.C. §§ 841(a)(1), 860, and 18 U.S.C. § 2 (Count Two); (3) possession with intent to distribute cocaine base within 1,000 feet of a protected location, under 21 U.S.C. §§ 841(a)(1), 860, and 18 U.S.C. § 2 (Count Three); (4) possession with intent to distribute cocaine within 1,000 feet of a protected location, under 21 U.S.C. §§ 841(a)(1), 860, and 18 U.S.C. § 2 (Count Four); (5) possession with intent to distribute

marijuana within 1,000 feet of a protected location, under 21 U.S.C. §§ 841(a)(1), 860, and 18 U.S.C. § 2 (Count Five); (6) and possession of firearms in furtherance of a drug trafficking crime, under 18 U.S.C. § 924(c)(1)(A) (Count Six).

Reyes proceeded to trial on all the counts. After several weeks of trial in August and September 2022, the jury returned a guilty verdict on Counts One, Two, Three, Four, and Five -- the controlled substance offenses. It found Reyes not guilty, however, as to Count Six -- the firearms offense.

In October of that year, Reyes filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 as to his five controlled substance offense counts. Specifically, as to Count One, Reyes argued that the government presented no evidence of Reyes's words or actions that could establish that he willfully joined the conspiracy charged in that count. As to Count Two, Reyes argued that he was convicted of aiding and abetting the possession with intent to distribute heroin within 1,000 feet of a protected location, but that the government failed to show he had the requisite intent or knowledge to be convicted as an accomplice. Further, he argued that the government had not shown that any events relevant to that count of conviction occurred within 1,000 feet of a protected location, as required by the statute of conviction. Finally, as to Counts Three, Four, and Five, Reyes argued that the government failed to prove that anyone

-3-

committed the principal offenses and further failed to prove that Reyes had participated as an accomplice or that the offenses took place within 1,000 feet of a protected location.

The District Court denied Reyes's motion for judgment of acquittal in full in December 2022.  The District Court then held a sentencing hearing in March 2023, and sentenced Reyes to 168 months for his convictions on Counts One, Two, Three, and Four, and 120 months for his conviction on Count Five, with the sentences to be served concurrently.

Reyes timely appealed.  He challenges the denial of his motion for judgment of acquittal only as to Count Two.  He also contends that the District Court's asserted trial errors, if established, would warrant the vacatur of his conviction on that same count.  In addition, he challenges the procedural and substantive reasonableness of his concurrent 168-month sentences for his convictions on Counts One, Two, Three, and Four.

**II.**

We begin with Reyes's contention that his conviction on Count Two must be reversed because the District Court erred in denying his Rule 29 motion for judgment of acquittal as to that count.  Reyes contends, in essence, that the District Court erred in denying this motion because "[t]he evidence at trial did not show that [he], []either as a principal []or as an aider and abettor, possessed with intent to distribute heroin."

-4-

The District Court ruled, however, that the evidence was sufficient to convict Reyes of Count Two as not only an aider and abettor but also based on his liability for the actions of his co-conspirators under Pinkerton v. United States, 328 U.S. 640 (1946). The District Court explained as follows:

> In the alternative, the jury was instructed that if they found [Reyes] guilty beyond a reasonable doubt as to the conspiracy count (Count One), "then [they] may also, but [] are not required to, find him guilty of the substantive crime charged in Counts Two (2), Three (3), Four (4), Five (5), or Six (6) . . . ." However, in order to do so, the jury must have found all of the following elements beyond a reasonable doubt, even if he did not personally participate in the acts constituting the crime or did not have actual knowledge of them. Namely,
>
>> First, that someone committed the substantive crime charged in Count (1) one, conspiracy to possess with intent to distribute controlled substances as related to Carlos Reyes-Rosario;
>>
>> Second, that the person you find actually committed the charged substantive crime was a member of the conspiracy of which you found that Carlos Reyes-Rosario was a member;
>>
>> Third, that this co-conspirator committed the charged substantive crime in furtherance of the conspiracy;
>>
>> Fourth, that the defendant was a member of this conspiracy at the time the charged substantive crime was committed and had not withdrawn from it; and

Fifth, that the defendant could reasonably have foreseen as a necessary or natural consequence of the unlawful agreement that one or more of his co-conspirators would commit the charged substantive crime.

Here, the jury heard testimony as to the operations of the drug points in broad daylight, and saw video evidence in support thereof. They were the triers of fact who evaluated the evidence and made determinations as to its weight and the credibility of the witnesses. As a matter of fact, the jury, exercising its duty, found [Reyes] not guilty as to Count Six of the Indictment. Therefore, the Court finds that a reasonable jury could have concluded that Reyes-Rosario and his coconspirators would sell the controlled substances charged in Counts Two through Five in furtherance of the drug trafficking conspiracy while he was a member of the organization.

(Alterations in original) (internal citations omitted).

Reyes does not challenge this aspect of the District Court's decision in any respect. For example, he does not argue that the District Court inaccurately stated the law in so ruling, that it was inappropriate for the District Court to rely on Pinkerton liability in this manner, or that his conviction on the conspiracy count charged in Count One was also based on insufficient evidence. Nor does he argue that the evidence adduced at trial was insufficient to find that he was criminally liable for his co-conspirators' possession of heroin with intent to distribute within 1,000 feet of a protected location. See United States v. Salvador-Gutierrez, 128 F.4th 299, 309 (1st Cir.

-6-

2025) (en banc) ("Under Pinkerton, a defendant is 'criminally liable for the substantive offenses committed by his co-conspirators during the course of and in furtherance of the conspiracy,' so long as the offenses could be 'reasonably foreseen as a necessary or natural consequence of the unlawful agreement.'" (citations omitted) (first quoting United States v. Hansen, 434 F.3d 92, 103 (1st Cir. 2006); and then quoting Pinkerton, 328 U.S. at 648)).

Indeed, Reyes fails to make any such challenge even though: (1) the jury heard testimony that Reyes was the leader of the drug point operation at Jardines de Cidra, a location that no one disputes qualifies as protected under the statute underlying Count Two; (2) saw videos of Reyes at that location, speaking with individuals who sold heroin there; (3) saw videos of heroin sales taking place at the Cidra drug point; and (4) heard testimony and saw evidence that heroin was purchased from that drug point in a recorded undercover transaction. Given Reyes's failure to develop any argument as to why the evidence adduced at trial would not have been sufficient to allow a reasonable jury to find Reyes guilty of the substantive offense charged in Count Two -- possession with intent to distribute heroin within 1,000 feet of a protected location -- based on the standard set forth in Pinkerton, we must reject his contention that his conviction on Count Two must be reversed.

**III.**

Reyes's claims of trial error concern: (1) the admission of a video recording of the execution of a search warrant and the admission of drugs and items seized during the execution of that warrant; and (2) the limitation of Reyes's cross-examination as to the criminal histories of the police officers who executed that search and the exclusion of evidence concerning that same subject. We see no merit in these challenges.

**A.**

**1.**

Reyes's first challenge to the admission of evidence concerns the District Court's decision to permit the government to admit a video into evidence with respect to a search by Puerto Rico police on January 14, 2016, of a house located in the Jardines de Cidra public housing project. During the search in question, Puerto Rico police officers recorded a video, which showed objects that a cooperating witness, Juan Claudio-Cervera ("Claudio"), testified were drugs, drug paraphernalia, and weapons belonging to the conspiracy with which Reyes was allegedly involved. That video was presented by the government at trial, alongside physical items that Claudio testified were seized during that search.

Reyes takes issue with the District Court's decision to allow Claudio to authenticate the video as an accurate portrayal of the Cidra house at the time of the search, and to authenticate

the items and drugs entered into evidence as those seized during the search. In Reyes's view, Claudio could not properly authenticate any of that evidence, because -- though he was present at the Cidra house at the time of the search -- he "did not record the video and was not present at all times while the video was being recorded." Reyes goes on to contend that the video lacked continuity and was not complete and therefore not susceptible to authentication by Claudio, because, as he describes the video, it "jumped in time on more than eleven occasions, showing that the video had been altered and was thus[] not the original video." Making matters worse in Reyes's eyes, the police officers who recorded the video and conducted the search were themselves engaged in "corrupt and illegal practices" during the timeframe in which the search occurred, "depriving the video of any reliability as to its authenticity and accura[cy]."

The proponent of a piece of evidence must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). That standard is met if a district court supportably finds that the proponent has shown "a reasonable probability" that the evidence is what it purports to be. United States v. Luna, 649 F.3d 91, 103 (1st Cir. 2011) (quoting United States v. Barrow, 448 F.3d 37, 42 (1st Cir. 2006)).

Moreover, "[t]his requirement may be met with various forms of evidence, including 'testimony that an item is what it is claimed to be' or evidence of 'the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" United States v. Vázquez-Soto, 939 F.3d 365, 373 (1st Cir. 2019) (cleaned up) (quoting Fed. R. Evid. 901(b)(1), (4)). And the standard set forth in Rule 901 also "does 'not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity.'" United States v. Blanchard, 867 F.3d 1, 6 (1st Cir. 2017) (quoting United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994)).

We afford deference to a district court's determination that evidence has been properly authenticated. See id. (quoting United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994)). Applying that deference here, Reyes has not shown that the District Court abused its discretion in finding Claudio's testimony provided sufficient grounds to conclude there was a reasonable probability that the video accurately depicted the search of the Cidra house. See id. at 5 ("Evidence of authenticity may consist of 'direct testimony of . . . a percipient witness.'" (quoting Paulino, 13 F.3d at 23)).

At trial, Claudio testified to having extensive personal knowledge of the conspiracy and its operations. He also testified

-10-

to having worked in the Cidra house five or six days a week for two years. Further, Claudio testified that he was present at the Cidra house on the day of the search and was shown a search warrant by police. He was also identified as being present in many frames of the search video. Claudio then repeatedly testified based on that experience that the video accurately portrayed the state of the Cidra house on the day of the search and the officers' actions that day.

True, Claudio did not take the video. But the evidence supportably shows that Claudio was present when many parts of the video were filmed. Cf. Holmquist, 36 F.3d at 169 ("A photograph's contents, buttressed by indirect or circumstantial evidence, can form a sufficient basis for authentication even without the testimony of the photographer or some other person who was present at the time it was taken."); id. (citing cases from the Fifth and Ninth Circuits establishing the same). And while the video jumped in time, that fact does not suffice to undermine Claudio's ability to confirm that its contents accurately depicted the Cidra house on the day of the search. See Blanchard, 867 F.3d at 6 (noting that Rule 901 does not require the proponent to rule out all possibility of doubt as to an item's authenticity).

**2.**

Reyes also challenges the District Court's decision to permit the government to admit into evidence items seized during

-11-

that search at issue. He argues that the District Court erred in doing so because Claudio was unable to properly authenticate them for the same reasons described above. He also argues that the government could have instead had the officers who conducted the search testify as to the video and the seized items' authenticity but declined to do so for strategic reasons. Finally, Reyes argues that Claudio could not authenticate those items due to "a chain of custody issue," given that he "had no personal knowledge that the items being presented were in fact the same items depicted in the video."[1]

Reyes's first ground of challenge fails for the reasons set forth above, given the detailed nature of Claudio's testimony. His second ground fails as well. As we explained, the District Court only needed evidence sufficient to supportably conclude that the video and items were reasonably likely to be what the government said they were. See Luna, 649 F.3d at 103. So long as Claudio's testimony provided that supportable basis -- which,

_____

[1] Insofar as Reyes contends that the admission itself of the video and items seized from the Cidra house violated his Fifth and Sixth Amendment rights, he does not appear to raise that contention until his reply brief, and in any event, fails to develop any argument on that score. We thus deem this argument waived. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2014) ("Our precedent is clear: we do not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

again for the reasons set forth above, it did -- we see no reason that the government should have been required to instead call the officers involved with the search as authentication witnesses. Cf. Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 51 (1st Cir. 1999) ("[T]here is no general rule that proof of a fact will be excluded unless its proponent furnishes the best evidence in his power." (quoting Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1543 (11th Cir.1994))).

We move on, therefore, to address Reyes's contention that the items seized from the house, including the drug evidence, were of the sort that would require testimonial tracing of the chain of custody under United States v. Anderson, 452 F.3d 66, 80-81 (1st Cir. 2006), to "render it improbable that the original item either has been exchanged with another or has been tampered with or contaminated," United States v. Abreu, 952 F.2d 1458, 1467 (1st Cir. 1992). We are not persuaded.

It is true that while evidence "is properly admitted if it is readily identifiable by a unique feature or other identifying mark[,] . . . . if the offered evidence is of the type that is not readily identifiable or is susceptible to alteration, a testimonial tracing of the chain of custody is necessary." Id. But we required such tracing of the chain of custody for the drug evidence in Anderson because "the drugs that the government sought to admit were not readily identifiable in any way." 452 F.3d at

-13-

80.  Here, by contrast, Claudio testified to his extensive knowledge of how drugs distributed by the conspiracy were prepared and packaged and that those drugs were present in the Cidra house on the day of the search packaged in the conspiracy's typical manner.  He further testified to being physically present while officers seized and placed into plastic evidence bags drugs packaged in this manner during the search of the Cidra house.  He identified the packaging on the drugs presented at trial as matching the packaging on those drugs seized at the Cidra house.  And he identified specific details about the stage of production that some of the drugs presented at trial were in when the Cidra house was searched, including how the relevant stage of production bore on the appearance of those items.  Indeed, Claudio testified to having himself handled the proffered drugs on the day of the search and explained that the color of the packaging on the drugs presented at trial confirmed that they were packaged on the day in question.  Thus, given Claudio's testimony about the identifying characteristics of the drug evidence, we cannot say the District Court abused its discretion in deeming that evidence properly authenticated.

Claudio's testimony also provided specific identifying information of the type missing in Anderson as to the other items seized from the Cidra house.  For example, he identified the brand, weapon type, and a particular modification to confirm that one of

the weapons offered into evidence was a gun that belonged to his co-conspirator and was seized during the Cidra search. The District Court then admitted that weapon as properly authenticated, while rejecting two other weapons that were offered but for which Claudio could not provide specific identifying information. And as for other drug paraphernalia, including notebooks, scales, packaging, and other production materials, Claudio repeatedly identified those items as being present in the Cidra house on the day of the search, including with reference to many of the items' location in the house, distinctive marks, or significance to the operations of the conspiracy. We thus also do not see how the District Court could be said to have abused its discretion in determining that those items would not require chain-of-custody tracing as a prerequisite to admissibility.

**B.**

The first of Reyes's challenges concerning limitations on his ability to cross-examine witnesses relates to the District Court's limitation of his ability to cross-examine Claudio about his personal knowledge of the criminal histories of the police officers involved in the search. That contention is without merit.[2] Reyes also appears to challenge the District Court's

---

[2] Insofar as Reyes means to suggest that the jury should have been entitled to review other evidence regarding the criminal histories of these officers, he does not identify what that evidence would be. See Zannino, 895 F.2d at 17.

-15-

limitation on his ability to cross-examine the police officers themselves.

"Confrontation [C]lause challenges are reviewed de novo to determine whether defense counsel was afforded a reasonable opportunity to impeach adverse witnesses; once that threshold is reached, the trial court's restrictions on the extent and manner of cross-examination are reviewed only for abuse of discretion." United States v. Gonzalez-Vazquez, 219 F.3d 37, 45 (1st Cir. 2000) (quoting United States v. Balsam, 203 F.3d 72, 87 (1st Cir. 2000)). The reasonable opportunity that defense counsel must be afforded is "sufficient leeway to establish a reasonably complete picture of the witness' veracity, bias, and motivation." Id. (quoting United States v. Laboy-Delgado, 84 F.3d 22, 28 (1st Cir. 1996)). We conclude that neither of Reyes's Confrontation Clause challenges has merit.

**1.**

Reyes contends that the District Court's limitation on his ability to cross-examine Claudio "preclud[ed] [him] from presenting evidence about [the police officers' criminal histories]." In his view, the limitation precluded him from introducing evidence calling into question the reliability of the government's theory connecting the heroin seized during the search of the Cidra house -- which the government alleged belonged to the conspiracy of which Reyes was a part -- and heroin seized during

-16-

a traffic stop of Reyes and another individual.  As a result, he asserts his Sixth Amendment right to confront the witnesses against him was violated because the District Court "foreclos[ed] the introduction of any testimony that supported his theory of defense."

Claudio was the witness whose credibility Reyes had a right to explore.  Reyes was allowed the opportunity to cross-examine Claudio extensively about topics relevant to the basis for his personal knowledge, including about the events that occurred on the day of the Cidra search.

True, Reyes was not allowed to cross-examine Claudio about the criminal histories of the officers who conducted the Cidra search.  But any information about the corruption of the officers who searched the Cidra house would not cast doubt on Claudio's central claims as to his personal knowledge of the operations of the conspiracy, the state of the Cidra house on the day of the search, or his basis for thinking that the evidence presented at trial was the same evidence seized during the search.

Thus, we do not see how this limitation on the scope of the cross-examination of Claudio amounted to a Sixth Amendment violation.  And, notwithstanding Reyes's contention to the contrary, our holding in Gonzalez-Vazquez comports with this conclusion.  There, we held that a district court's limitation on a defendant's ability to cross-examine a police officer about the

-17-

corruption of other officers "did not prevent the jury from obtaining 'a reasonably complete picture of the witness' veracity, bias, and motivation" because "any testimony tending to show that these other officers were dishonest would not implicate [the witness's]" credibility.  Id. (quoting Laboy-Delgado, 84 F.3d at 28).

**2.**

Insofar as Reyes can be read also to contend that his Confrontation Clause right was violated because he was denied the opportunity to confront the officers who conducted the search of the Cidra house, we agree with the government that his arguments fail at the threshold.  He never contends that the officers who conducted the search were witnesses against him, either in testifying at his trial, or in having their own statements introduced as hearsay.  See Samia v. United States, 599 U.S. 635, 644 (2023) ("[T]he Confrontation Clause applies only to witnesses 'against the accused.'" (quoting Crawford v. Washington, 541 U.S. 36, 50 (2004))).[3]

---

[3] Because we find that no error -- of either constitutional or merely evidentiary significance -- occurred, we need not address the parties' arguments as to the prejudice Reyes contends he suffered due to the admission of the search video and related evidence and what he identifies as limitations on his ability to present his defense.  We thus also need not address the parties' dispute over the proper standard of review that should apply to any such determination of prejudice.

There remains to address Reyes's challenges to the procedural and substantive reasonableness of his 168- and 120-month concurrent sentences.

"Claims challenging the procedural and substantive reasonableness of a sentence are subject to a bifurcated inquiry: 'we first determine whether the sentence imposed is procedurally reasonable' and if we conclude that it is, we 'then determine whether it is substantively reasonable.'" United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021) (quoting United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021)). "A sentence is procedurally unreasonable when the district court commits a procedural error such as 'failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range.'" Id. at 28-29 (quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020)).

"A sentence is substantively reasonable if the 'sentencing court has provided a "plausible sentencing rationale" and reached a "defensible result."'" Id. at 29 (quoting Flores-Quiñones, 985 F.3d at 133). We review preserved claims of procedural and substantive unreasonableness for abuse of

discretion.  United States v. Arsenault, 833 F.3d 24, 28 (1st Cir. 2016) ("[W]hen assessing procedural reasonableness, this Court engages in a multifaceted abuse-of-discretion standard whereby 'we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion.'" (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st. Cir. 2015)); United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023).  Unpreserved claims of sentencing error, however, are reviewed under the plain error standard. United States v. McCullock, 991 F.3d 313, 318 (1st Cir. 2021).

**A.**

Reyes first contends that his sentence was procedurally unreasonable.  In his view, this is so because the District Court failed to adequately explain its decision to impose the 14-year sentence that Reyes received.  As he sees it, the District Court failed to give specific and individualized reasons pertaining to Reyes's role in the offenses for which he was convicted for imposing the sentence that it did and instead "merely limited itself to provid[ing] a boilerplate statement that it had considered the sentencing factors, as well as the elements of the offense and Reyes'[s] participation in it."

The government correctly points out, however, that Reyes did not raise his failure-to-explain objection below.  Yet, Reyes

-20-

does not address any of the final three prongs of the four-prong plain error standard of review that applies to this unpreserved challenge, beyond a single, conclusory sentence in his reply brief. See McCullock, 991 F.3d at 318; United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019). Accordingly, the challenge fails. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); McCullock, 991 F.3d at 318.

## B.

Reyes contends that his sentence is substantively unreasonable, because the District Court imposed it based on "illegally obtained and admitted evidence about Reyes'[s] participation . . . in connection to heroin possession [and] distribution." Thus, in his view, the District Court "sentenced Reyes based on circumstances and conduct of codefendants, in situations where he was not even present, and [based] on conduct of a third party."

Reyes does not identify, though, the evidence on which he contends that the District Court improperly relied. Insofar as he is referring to the trial evidence to which he objects on appeal, we have already explained that the District Court committed no error in allowing that evidence before a jury, and Reyes presents no separate argument as to why it would have been improper for the District Court to consider the same evidence at sentencing. Insofar as Reyes means to point to any other evidence, any such

argument is waived for lack of development.  See Zannino, 895 F.2d at 17.

Further, Reyes does not develop any argument as to why the District Court's decision to sentence him based on conduct of co-conspirators or third parties was substantively unreasonable in light of the United States Sentencing Guidelines provisions allowing conduct of others to be attributed to the defendant for sentencing purposes.  See U.S. Sent'g Guidelines Manual § 1B1.3 (U.S. Sent'g Comm'n) ("Relevant Conduct").  He thus has not demonstrated that the District Court erred in imposing the sentence that it did.

**V.**

For the foregoing reasons, we **affirm** the District Court's decisions below.