USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-2470 UNITED STATES OF AMERICA, Appellee, v. TEMISTOCLES PAULINO, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ _________________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ _________________________ Scott A. Lutes for appellant. ______________ Margaret E. Curran, Assistant United States Attorney, with ___________________ whom Edwin J. Gale, United States Attorney, and Gerard B. ______________ __________ Sullivan, Assistant United States Attorney, were on brief, for ________ the United States. _________________________ January 5, 1994 _________________________ SELYA, Circuit Judge. Defendant-appellant Temistocles SELYA, Circuit Judge. _____________ Paulino asks us to set aside his conviction and direct his acquittal, or, in the alternative, order a new trial. Having reviewed the record, we decline to disturb the judgment below. I I This case finds its genesis in an undercover investigation of narcotics trafficking conducted by the Providence, Rhode Island police department. The investigation focused on an apartment building at 70 Peace Street. In due course, the police began paying special attention to apartment 706. On several occasions in late May and early June of 1992, they observed appellant in and around the apartment. After intensive surveillance, an informant, acting under police auspices, entered apartment 706 during early June and made a controlled purchase of cocaine from the principal suspect, Moreno, inside the apartment. While the transaction was in progress detectives observed Paulino peering from a window. The officers subsequently obtained a search warrant and executed it on June 11, 1992. They discovered appellant in the kitchen and a stranger, Junior Rodriguez, taking a shower.1 The man known as "Moreno" was elsewhere when the police arrived, and his whereabouts remain a mystery. Although the tiny apartment contained little more than a kitchen, bathroom, and bedroom, it nevertheless disclosed ____________________ 1Prior to June 11, 1992, the date when the police discovered him completing his ablutions, Rodriguez had never before been seen in or around 70 Peace St. 2 bountiful evidence of drug trafficking activities. Detectives found an assortment of drugs in the bedroom, namely, three plastic bags containing 64.02 grams of cocaine in the aggregate, and a fourth bag containing a "speedball" (a mixture of cocaine and heroin) weighing 11.79 grams. The search party found the speedball perched on a small coffee table, inside a five-pound bag of rice; on a piece of foil next to the rice rested a rock of cocaine weighing 95.11 grams. The rock showed signs of having recently been "cooked". The search uncovered more than the narcotics cache. From atop the coffee table, the police confiscated a collection of drug paraphernalia, including a digital scale, three sifters, a playing card, packaging materials, three separate kinds of cutting agents, and a small notebook that appeared to be a drug ledger. On a chair next to the table, under a shirt, within easy reaching distance of the drugs, officers spotted a loaded revolver.2 On appellant's person, officers found a key to the apartment's front door. No other key to the apartment was located. II II Based primarily on this evidence, a federal grand jury returned a three-count indictment against appellant. Count one charged him with possession of cocaine, intending to distribute it, in violation of 21 U.S.C. 841(a)(1) & (b)(1)(C) (1988 & ____________________ 2We temporarily exclude from the inventory of unveiled items the receipt for a Postal Service money order, discussed infra _____ Part III. 3 Supp. IV 1992). Count two charged him with possessing heroin, intending to distribute it, in violation of the same statutory provisions. Count three charged him with possession of a firearm during and in relation to drug trafficking, in violation of 18 U.S.C. 924(c) (1988 & Supp. IV 1992). A jury found appellant guilty across the board. On December 10, 1992, the court sentenced him to concurrent 37-month terms of imprisonment on the two narcotics counts and a consecutive 60-month prison term on count three. This appeal ensued. III III Appellant's most touted assignment of error relates to a so-called "customer's receipt" for a Postal Service money order discovered on a kitchen shelf. The receipt bore appellant's name (although his given name, "Temistocles," was spelled with two surplus letters, viz, "Temistomecles"), listed his address as "70 ___ Peace #706 Prov. RI 02907," and purported to corroborate payment to "Tower Management" in an amount of $280. In the "used for" space, someone had written "May rent." At trial, the prosecution offered the receipt to prove the truth of the matter asserted therein: that appellant had paid the apartment rent for May 1992 a period when the apartment was used as a drug distribution outlet. The proffer was unaccompanied by testimony from the landlord, from Tower Management, from the postal service, or, for that matter, from any person other than a member of the search party. The lower court nonetheless admitted the receipt into evidence over 4 appellant's timely objection and the prosecutor used it to good effect. In this court, as below, appellant assigns error. He cites both the lack of an appropriate foundation and the hoary prohibition against hearsay evidence. We examine these assertions in turn. A A The logical starting point for consideration of appellant's first asseveration is Fed. R. Evid. 901(a). The rule reminds us that documentary exhibits must be authentic and that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a); see also ___ ____ United States v. Arboleda, 929 F.2d 858, 869 (1st Cir. 1991). _____________ ________ Under the Evidence Rules, authentication can be accomplished without the direct testimony of either a custodian or a percipient witness.3 See Fed. R. Evid. 903. Thus, for example, ___ a document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," can, in cumulation, provide ____________________ 3Notwithstanding this possibility, prudent parties will usually take advantage of direct testimony, especially when it is readily available. In this case, for example, the government jeopardized the entire prosecution by not attempting to authenticate the receipt in better fashion. We should not have to remind experienced prosecutors that, as Benjamin Franklin observed more than two centuries ago, for want of a nail the rider will sometimes be lost. 5 sufficient indicia of reliability to authenticate it. Fed. R. Evid. 901(b)(4); see also United States v. Newton, 891 F.2d 944, ___ ____ ______________ ______ 947 (1st Cir. 1989). In respect to matters of authentication, the trial court serves a gatekeeping function. See generally Fed. R. Evid. ___ _________ 104(a) (discussing handling of preliminary questions of admissibility). If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury. See United States v. Ladd, 885 F.2d 954, 956 (1st Cir. 1989); ___ ______________ ____ United States v. Williams, 809 F.2d 75, 89 (1st Cir. 1986), cert. _____________ ________ _____ denied, 481 U.S. 1030 (1987); see also Fed. R. Evid. 104(e). ______ ___ ____ Because rulings of this stripe involve the exercise of the district court's sound discretion, we review them only for mistake of law or abuse of that discretion. See United States v. ___ _____________ McMahon, 938 F.2d 1501, 1508 (1st Cir. 1991); Ladd, 885 F.2d at _______ ____ 956; United States v. Masse, 816 F.2d 805, 813 (1st Cir. 1987); _____________ _____ Williams, 809 F.2d at 89-90. ________ In this instance, the trial court addressed the issue of authenticity and concluded that the receipt's contents and the attendant circumstances warranted a finding of authenticity. We believe that this determination is supportable. The document was of a type likely to be saved only by a rent-payer (or, perhaps, by a landlord). It was found, neatly stored, in a small, seemingly uninhabited apartment. Although no one was in 6 residence, appellant had been in the apartment, on and off, for at least two weeks prior to the searchers' discovery of the document, and, importantly, he had been seen there in May, that is, during the rental period covered by the receipt. To clinch matters, appellant had been in the apartment on the day of the earlier sale; he was there at the time of the raid; and he alone possessed a latchkey. The judge plausibly could infer from those facts that appellant had somehow acquired a right of occupancy in, and a degree of dominion over, the apartment. The physical setting in which the document surfaced is equally telling. The apartment harbored a large-scale narcotics operation. Drugs, drug paraphernalia, and tools of the trade were strewn about in plain view. The circumstances supported an inference that appellant was part and parcel of the ongoing activities, see infra Part IV; and, further, that payment in a ___ _____ hard-to-trace manner, such as payment by money order, was compatible with the nature of the illicit enterprise. Lastly, the content of a disputed document may itself furnish indicia of authenticity. See Newton, 891 F.2d at 947; ___ ______ see also Fed. R. Evid 901(b)(4). Here, the document's contents ___ ____ buttress a finding that it is an authentic rent receipt, issued to Paulino. The document bears appellant's name.4 It lists the correct apartment number. And, it refers to a time frame within ____________________ 4Appellant makes much of the fact that his first name was misspelled. We do not think that this circumstance possesses decretory significance. It is altogether unsurprising that a payee would spell a payor's rather unusual name incorrectly in scribbling a receipt. 7 which the drug distribution center was in operation. Taking the totality of the circumstances into account, and giving due deference to the wide radius of the trial court's discretion in such matters, we cannot say that the court erred in ruling that, at least presumptively, the document is what it purports to be: a receipt evidencing appellant's payment of rent with respect to apartment 706. B B Authenticity and admissibility, though often closely related, are separate inquiries. The mere fact that a document is authentic does not necessarily mean that it is admissible in evidence. See United States v. De Jongh, 937 F.2d 1, 5 n.7 (1st ___ _____________ ________ Cir. 1991). We turn, then, to the question of admissibility. In overruling appellant's hearsay objection, the district court did not specifically identify a hearsay exclusion or exception that removed the barrier to introduction of the evidence. While this lack of specificity complicates the appellate chore, it does not require reversal of the lower court's ruling. If evidence is admissible for the truth of the matter asserted under some cognizable theory, the district court's failure to articulate that theory will not prevent an appellate court from relying upon it. See United States v. ___ _____________ Nivica, 887 F.2d 1110, 1127 (1st Cir. 1989), cert. denied, 494 ______ _____ ______ U.S. 1005 (1990); cf. Polyplastics, Inc. v. Transconex, Inc., 827 ___ __________________ ________________ F.2d 859, 860-61 (1st Cir. 1987) (explaining that an appellate court is not wed to the trial court's reasoning, but is free to 8 affirm a judgment on any independently sufficient ground made manifest in the record). In the present situation, we believe the receipt can be classified as an adoptive admission, and, therefore, that it eludes the hearsay bar. This analysis depends, of course, on Fed. R. Evid. 801(d)(2)(B), which instructs courts that when the evidence shows a party to have "manifested an adoption or belief in [the] truth" of a statement made by another, the statement loses its hearsay character and becomes admissible in evidence if offered against the adopting party. In applying this doctrine, courts frequently have construed possession of a written statement as an adoption of what its contents reveal. See, e.g., ___ ____ United States v. Ospina, 739 F.2d 448, 451 (9th Cir.) (involving _____________ ______ a receipt for a hotel room), cert. denied, 469 U.S. 887 (1984) _____ ______ and 471 U.S. 1126 (1985); United States v. Marino, 658 F.2d 1120, ___ _____________ ______ 1124-25 (6th Cir. 1981) (involving possession of airline tickets). We think that the correct approach, exemplified by Ospina, is that "possession plus" can evidence adoption. Put ______ another way, so long as the surrounding circumstances tie the possessor and the document together in some meaningful way, the possessor may be found to have adopted the writing and embraced its contents. Over and above possession, the tie is very strong here: appellant held the only known key to the apartment; he had frequented the premises; the saved document bore his name; and he was, at the very least, privy to the criminal enterprise. 9 Consequently, the record is sufficient to permit a finding that appellant possessed and adopted, the receipt. We need not wax longiloquent. The court of appeals reviews a trial judge's admission of evidence over a hearsay objection only for abuse of discretion. See DCPB, Inc. v. City ___ __________ ____ of Lebanon, 957 F.2d 913, 918 (1st Cir. 1992); United States v. __________ _____________ Abreu, 952 F.2d 1458, 1467 (1st Cir.), cert. denied, 112 S. Ct. _____ _____ ______ 1695 (1992). We are satisfied that, in this instance, Fed. R. Evid. 801(d)(2)(B) authorized the admission of the receipt as non-hearsay evidence against the appellant. The district court, therefore, did not outstrip the bounds of its discretion. IV IV Appellant's final assignment of error questions the sufficiency of the evidence. Sufficiency challenges travel a well defined course in criminal cases. Following a guilty verdict, a reviewing court must scrutinize the record, drawing all reasonable inferences in favor of the verdict, to ascertain if a rational jury could have found that the government proved each element of the crime beyond a reasonable doubt. See United ___ ______ States v. Echeverri, 982 F.2d 675, 677 (1st Cir. 1993); United ______ _________ ______ States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), cert. denied, ______ _____ _____ ______ 113 S. Ct. 1005 (1993). To sustain a conviction, a reviewing court need not conclude that only a guilty verdict could appropriately be reached; it is enough that the jury's determination draws its essence from a plausible reading of the record. See Echeverri, 982 F.2d at 677; Ortiz, 966 F.2d at 711. ___ _________ _____ 10 Using these guideposts, the quantum of evidence adduced here, though largely circumstantial, is adequate to the task.5 Appellant's sufficiency challenge is a weak point, easily dispatched. For discussion purposes, however, it must be bifurcated to permit separate analysis of (a) the two drug trafficking counts, and (b) the firearms count. A A Appellant asserts that sheer happenstance placed him in harm's way and questions whether there was enough evidence to sustain a finding that he possessed cocaine and heroin, intending to distribute them, as charged in counts one and two, respectively. To convict on these charges, the government had the burden of proving beyond a reasonable doubt that Paulino knowingly and intentionally possessed the drugs, and did so with intent to distribute them. See United States v. Barnes, 890 ___ _____________ ______ F.2d 545, 549 (1st Cir. 1989), cert. denied, 494 U.S. 1019 _____ ______ (1990); see also 21 U.S.C. 841(a)(1) & (b)(1)(C). Appellant ___ ____ suggests that a necessary ingredient guilty knowledge is lacking here. To bolster this suggestion, he labors to convince us that the evidence shows no more than his mere presence at the apartment where the drugs were situated. He argues, therefore, that the district court erred in denying his motion for judgment of acquittal on both drug trafficking counts. We are not ____________________ 5In a criminal case, the government can satisfy its burden of proof by either direct or circumstantial evidence, or by a combination of both. See Echeverri, 982 F.2d at 677; United ___ _________ ______ States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir.), cert. ______ _______________ _____ denied, 492 U.S. 910 (1989). ______ 11 persuaded. This court has recognized the difference between "mere presence" and "culpable presence" in the context of drug trafficking activities. See United States v. Sepulveda, ___ F.3d ___ _____________ _________ ___, ___ (1st Cir. 1993) [No. 92-1362, slip op. at 8] ("While mere presence is not sufficient to ground criminal charges, a defendant's presence at the point of a drug sale, taken in the light of attendant circumstances, can constitute strong evidence of complicity."); Ortiz, 966 F.2d at 712 (holding that, while _____ mere presence does not establish guilt, presence can establish guilt under circumstances where it implies participation). Thus, a reviewing court faced with a "mere presence" claim must evaluate the attendant circumstances in order to determine the quality of a particular defendant's presence at a location where drugs are found. See Echeverri, 982 F.2d at 678. ___ _________ In Ortiz, we concluded that evidence of a defendant's _____ participation in a dialogue between a buyer and a seller of illicit drugs was enough to warrant a finding of more than mere presence. See Ortiz, 966 F.2d at 712-13. We mentioned that ___ _____ "[j]urors can be assumed to know that criminals . . . rarely seek to perpetrate felonies before larger-than-necessary audiences." Id. at 712 (collecting cases). In Echeverri a case that evokes ___ _________ comparisons with the case at bar we also held that culpable presence could be found. See Echeverri, 982 F.2d at 678. Our ___ _________ ruling there revolved around the defendant's proximity to drugs and drug paraphernalia which were strewn about an apartment. See ___ 12 id. The facts of this case are roughly analogous to, but ___ somewhat more inculpatory than, the facts in Echeverri. _________ Specifically, based on the evidence of record here, a rational factfinder plausibly could conclude that appellant had dominion over apartment 706; that he actually or constructively possessed the contraband located therein; that he intended the drugs for distribution;6 that his participation in the enterprise was knowing and willful; and that, accordingly, his presence during the controlled buy, and at the time of the raid, was culpable rather than innocent. See, e.g., Echeverri, 982 F.2d at 678; ___ ____ _________ United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. ______________ _______________ 1991); United States v. Glover, 814 F.2d 15, 16-17 (1st Cir. _____________ ______ 1987). B B The final aspect of appellant's sufficiency challenge relates to count three. This attack which boils down to a claim that the evidence fails to show he "used" or "carried" the firearm in connection with drug trafficking activities ignores settled law in this circuit and elsewhere. Under the statute of conviction, 18 U.S.C. 924(c), the emphasis is on a firearm's availability for use, regardless of whether it is actually used. Thus, in United States v. Hadfield, 918 F.2d 987 (1st Cir. 1990), _____________ ________ cert. denied, 111 S. Ct. 2062 (1991), a section 924(c)(1) case, _____ ______ ____________________ 6The total cocaine seized, not including the speedball, aggregated 159.13 grams. Expert testimony established that the drugs were for distribution rather than personal use, and that their value exceeded $6,000. On appeal, Paulino has not challenged either the admission or the import of this testimony. 13 we made it pellucid that, where a drug trafficker is not carrying a gun on his person but has one nearby, the court's critical concern should not be whether the weapon was "instantly available" or "exclusively dedicated to the narcotics trade," but whether it was "available for use" in connection with the narcotics trade. Id. at 998; see also Smith v. United States, ___ ___ ____ _____ ______________ 113 S. Ct. 2050, 2059 (1993) (explaining that a weapon meets the statutory test if its presence, rather than being accidental or coincidental, facilitates, or has the potential of facilitating, the drug trafficking offense). We think the case at hand is largely governed by Hadfield. ________ Paulino was apprehended in an outwardly uninhabited apartment that served or so the jury supportably could have found as a place from which drugs were being sold. Drugs, drug paraphernalia, and a loaded revolver were located in close proximity to one another. Paulino had an apparent possessory interest in, and a significant degree of control over, the premises. On these facts, a reasonable factfinder certainly could find the requisite facilitative nexus, that is, that the gun was kept in the apartment to be "available for use" during and in relation to the ongoing drug peddling. See Abreu, 952 ___ _____ F.2d at 1466 ("Even though a weapon is never fired, if it is kept nearby by a drug dealer, it is 'used' so as to satisfy the statutory requirement."); United States v. Castro-Lara, 970 F.2d _____________ ___________ 976, 983 (1st Cir. 1992) (collecting cases), cert. denied, 113 S. _____ ______ Ct. 2935 (1993). And the jury also could conclude, without 14 discernible difficulty, that appellant knew of the gun, the drug trafficking, and the obvious relationship between the two. See ___ generally Echeverri, 982 F.2d at 679 (reaffirming that "criminal _________ _________ juries are not expected to ignore what is perfectly obvious"). No more is exigible. V V We need go no further. Finding no error in the admission of the rent receipt and no shortfall in the government's overall proof of guilt, we remit appellant to his just deserts. Affirmed. Affirmed. ________ 15