USCA1 Opinion

 

 June 9, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1811 UNITED STATES, Appellee, v. ISIDRO RODRIGUEZ, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Joseph A. DiClerico, U.S. District Judge] ___________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ ___________________ John P. Rab and Rad & Neiman, on brief for appellant. ___________ ____________ Paul M. Gagnon, United States Attorney, and Jean B. Weld, ______________ _____________ Assistant United States Attorney, on brief for appellee. __________________ __________________ Per Curiam. Appellant Isidro Rodriguez appeals his ___________ conviction on four counts of distributing cocaine, in violation of 21 U.S.C. 841(a), and one count of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1). We summarily affirm. I In September 1989, Detective Ronald Scaccia of the Nashua Police Department, working in an undercover capacity, made three hand-to-hand purchases of cocaine from an individual known to him as "Isidro" at 4 1/2 Kendrick Street in Nashua, New Hampshire. After further investigation, the Nashua police obtained a search warrant for the third floor apartment in which Isidro lived. The search discovered over one half kilogram of cocaine and paraphernalia associated with the sale of cocaine hidden in a trap door within the apartment. A .25 caliber semi-automatic handgun, a fully loaded magazine of .25 caliber ammunition, and an additional box of ammunition were found in a strong box, approximately six feet from the trap door. A receipt for the purchase of the gun, listing Rodriguez as the purchaser and showing an address of 4 1/2 Kendrick Street, was also found in the box. Various identification documents in the name of Isidro Rodriguez, including rent receipts for a room at 4 1/2 -2- Kendrick Street in the name of Isidro Rodriguez were found in a dresser drawer. Rodriguez was not apprehended. In December 1989, Rodriguez, along with five other individuals, was indicted on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. 846. He was also indicted on three counts of distributing cocaine, one count of possession with intent to distribute cocaine, and one count of possessing a handgun in furtherance of a drug trafficking crime. An arrest warrant for Rodriguez was also issued. On April 14, 1992, the warrant was executed on an individual, using the name of Ysidro Adames and residing in Erie, Pennsylvania. Detective Scaccia positively identified Adames as the person from whom he had purchased the drugs at the Kendrick Street apartment. However, Adames' fingerprints did not match those found in the search of the apartment and he was released. Rodriguez was arrested in February 1993 in Lawrence, Massachusetts. At the time Rodriguez was using the name "Ysobel Gonzalez." Prior to trial, the government dismissed all counts against the others who had been indicted along with Rodriguez. It also dropped the conspiracy charge against Rodriguez. At trial, expert testimony was presented that Rodriguez' fingerprints matched those found in the Kendrick Street apartment. Rodriguez was also identified by Detective -3- Scaccia and by Sergeant Gravel, who had assisted in the investigation, as the individual who had been involved in the September 1989 distribution of cocaine. Finally, the mother of Rodriguez' children testified at trial that the appellant was the man she had known previously as "Isidro Rodriguez" and that he had lived at 4 1/2 Kendrick Street until approximately October 1989. She also testified that she had given him the handgun as a gift. The jury found Rodriguez guilty on all counts. He was sentenced to concurrent terms of sixty three months' imprisonment on each of the four counts of distributing cocaine and a mandatory, consecutive term of sixty months on the weapon's charge. Rodriguez raises three issues on appeal. First, he asserts that the district court erred in denying his motion to suppress certain evidence seized during the search of the Kendrick Street apartment. Second, he argues that his right to obtain exculpatory evidence from the prosecution was violated by the magistrate judge's denial of his requests for certain materials. Finally, he contends that the evidence was insufficient to support his conviction. II Rodriguez asserts that certain "identification" evidence, including a resident alien card, a passport, and an automobile title, found in a dresser drawer during the search -4- of the Kendrick Street apartment, should have been suppressed on the ground that the items seized were beyond the scope of the warrant. This contention, however, is belied by the plain language of the warrant which authorizes a search for, inter alia, "Records of Occupancy." The documents seized _____ ____ could indicate occupancy of the premises and thus were within the scope of the warrant. See United States v. Tabares, 951 ___ _____________ _______ F.2d 405, 408 (1st Cir. 1991) (finding photographs to be within the warrant's instructions "to seize 'records' that could indicate 'ownership, tenancy and/or control'" of the described premises). III Rodriguez also alleges that his due process right to obtain exculpatory evidence under the principles of Brady v. _____ Maryland, 373 U.S. 83 (1963), and its progeny, was violated ________ when the magistrate judge denied his motion for discovery of (1) information regarding his alleged co-conspirators; and (2) information related to the investigation, identification and arrest of the person known as Ysidro Adames. Rodriguez contends, that, at the very least, the court should have conducted an in camera inspection of the material before __ ______ denying his discovery request. Brady requires the government to disclose any _____ exculpatory evidence which is "material either to guilt or to punishment." Brady, 373 U.S. at 87. Material evidence is _____ -5- that which, if disclosed, "might have affected the outcome of the trial." United States v. Agurs, 427 U.S. 97, 104 (1976). _____________ _____ However, "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files." Pennsylvania v. ____________ Ritchie, 480 U.S. 39, 59 (1987). Nor does it entitle him to _______ require a trial court "to conduct an in camera fishing __ ______ expedition through the government's files." United States v. _____________ Pou, 953 F.2d 363, 366-67 (8th Cir.), cert. denied, 112 S.Ct. ___ ____ ______ 1982 (1992); see also United States v. Navarro, 737 F.2d 625, ___ ____ _____________ _______ 631 (7th Cir.), cert. denied, 469 U.S. 1020 (1984) ("Mere ____ ______ speculation that a government file may contain Brady material _____ is not sufficient to require a remand for in camera __ ______ inspection."). Rather, "[t]o establish a violation of Brady, _____ a defendant must provide the court with some indication that the materials to which he . . . needs access contain material and potentially exculpatory evidence." United States v. ______________ Brandon, 17 F.3d 409, 456 (1st Cir. 1994). In addition, the _______ defendant must show that any evidence not disclosed caused him "undue prejudice." United States v. Drougas, 748 F.2d 8, _____________ _______ 23 (1st Cir. 1984). Rodriguez was found guilty of distributing cocaine to Detective Scaccia and of possessing a weapon in furtherance of drug trafficking. According to the evidence presented at trial, all these crimes were committed by Rodriguez alone. -6- Since Rodriguez provided no indication that information relating to the others who were indicted along with him was in any way material to his guilt on these charges, and since the conspiracy charge against Rodriguez had been dismissed prior to trial, the denial of his request for discovery of this material did not violate his rights under Brady. _____ On the other hand, the evidence relating to the identification of Ysidro Adames was clearly exculpatory. However, the government provided Rodriguez with an official Federal Bureau of Investigation [FBI] report relating to Adames' arrest and with the transcript of the detention hearings containing Detective Scaccia's misidentification testimony. In addition, at trial, Rodriguez not only thoroughly cross-examined Scaccia about the misidentification but also called as a defense witness FBI Special Agent Kim Kelly who testified as to the facts surrounding Adames' identification and arrest. Rodriguez, therefore, was able to present to the jury the exculpatory information surrounding the misidentification of Adames. He has failed to show that he suffered any prejudice from the court's denial of his request for other information concerning the misidentification. IV -7- Finally, Rodriguez contends that the evidence presented at trial was insufficient to support his conviction on either the drug distribution charges or that for weapon possession. Rodriguez' sole challenge to the sufficiency of the evidence for the drug distribution charges is his claim that Detective Scaccia's misidentification of Adames as the man from whom Scaccia purchased cocaine at the Kendrick Street apartment created a reasonable doubt as to Scaccia's in-court identification of Rodriguez as that person. However, the assessment of Scaccia's in-court identification was within the province of the jury. See, e.g., United States v. Arias- ___ ___ _____________ ______ Santana, 964 F.2d 1262, 1269 (1st Cir. 1992). In this case, _______ after having been presented with the relevant testimony as to Scaccia's misidentification of Adames, the jury chose to credit Scaccia's in-court identification. This determination cannot be considered unreasonable, especially in light of the other testimony and physical evidence corroborating Detective Scaccia's account. Considering the evidence as a whole in the light most favorable to the verdict, see, e.g., United ___ ___ ______ States v. Paulino, 13 F.3d 20, 25 (1st Cir. 1994), we find no ______ _______ error in the jury verdict as to the drug distribution charges. We likewise find the evidence sufficient to uphold Rodriguez' conviction on the weapon's charge. To obtain a conviction under 18 U.S.C. 924(c), the government was -8- required to prove, beyond a reasonable doubt, that Rodriguez had the firearm "readily accessible for [his] use" in the commission of a drug trafficking crime. United States v. ______________ Abreu, 952 F.2d 1458, 1466 (1st Cir.), cert. denied, 112 _____ ____ ______ S.Ct. 1695 (1992); see also Paulino, 13 F.3d at 26. ___ ____ _______ Rodriguez contends that there was no evidence that the gun found in the Kendrick Street apartment played any role in his alleged distribution of cocaine. According to the evidence presented at trial, an automatic weapon, with a fully loaded magazine clip and extra ammunition, was found in the same room as over five hundred grams of cocaine and various drug paraphernalia. Also found in the room were several documents supporting a reasonable inference that Rodriguez had dominion and control over the room and its contents. "[U]ltimately, whether or not the gun[] helped appellant commit the drug crime is a matter for a jury, applying common-sense theories of human nature and causation." United States v. Wilkinson, 926 F.2d 22, 26 (1st _____________ _________ Cir.), cert. denied, 501 U.S. 1211 (1991). In this case, the ____ ______ proximity of the weapon to drugs and paraphernalia, together with the documentary evidence, supports a jury finding that the gun was used by Rodriguez to facilitate drug trafficking. See Paulino, 13 F.2d at 26 (weapon found near drugs and drug ___ _______ paraphernalia in apartment over which defendant had a significant degree of control); Abreu, 952 F.2d at 1466 _____ -9- (weapon, cocaine, cocaine packing and distribution devices found in apartment rented by defendant). Affirmed. See 1st Cir. Loc. R. 27.1. ________ ___ -10-