# United States Court of Appeals
## For the First Circuit

No. 19-1639

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN CARLOS TORRES-CORREA, a/k/a Jampi,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Kayatta, Lipez, and Barron,
Circuit Judges.

Javier A. Morales-Ramos on brief for appellant.
W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Gregory B. Conner, Assistant United States Attorney, on brief for appellee.

January 18, 2022

**LIPEZ, <u>Circuit Judge</u>.** Having participated in the armed robbery of a CVS pharmacy, Jean Carlos Torres-Correa was tried and convicted of interfering with commerce by threats or violence, in violation of 18 U.S.C. § 1951 and § 2 ("Hobbs Act robbery"), and using, carrying, or possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and § 2. He makes three claims on appeal: (1) Hobbs Act robbery is not a crime of violence for purposes of § 924(c)(1)(A); (2) the trial court admitted video surveillance footage without proper authentication; and (3) the trial court improperly excluded impeachment evidence challenging the credibility of the government's cooperating witness. Finding his claims meritless, we affirm.

## I.

At approximately 4:00 a.m. on January 13, 2017, three masked assailants -- later identified as Torres-Correa, I.R.,[1] and Pablo Díaz-Ramírez -- robbed a CVS pharmacy in Caguas, Puerto Rico. I.R. carried a handgun, Díaz-Ramírez carried a modified AR-15, and Torres-Correa carried a bag to store the proceeds of the robbery. Three people were inside the store -- a clerk, a security guard, and the shift supervisor, Calixto Cotto-Carrasquillo. During the robbery, I.R. and Díaz-Ramírez threatened the three CVS employees

---

[1] We refer to I.R. by his initials because he was a minor at the time of the offense.

with their weapons, and I.R. repeatedly pistol-whipped Cotto-Carrasquillo. I.R., Díaz-Ramírez, and Torres-Correa fled the store having stolen $207 and two bottles of liquor.

During a police interview in an unrelated investigation, Díaz-Ramírez confessed to the CVS robbery, and identified I.R. and Torres-Correa as his accomplices. Díaz-Ramírez also confessed to a series of additional crimes, including the robbery of a Subway restaurant.

Torres-Correa and Díaz-Ramírez were indicted for Hobbs Act robbery (18 U.S.C. § 1951), and for using, carrying, or possessing a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)). Díaz-Ramírez was also indicted for several other offenses. Torres-Correa filed a motion to dismiss the § 924(c) count, claiming that Hobbs Act robbery was not a crime of violence for purposes of § 924(c)(1)(A). The district court denied the motion.

A three-day trial was held in October 2018. The government called three witnesses: the CVS store manager, Rene Alicea-Salgado, the shift supervisor, Cotto-Carrasquillo, and Díaz-Ramírez. Alicea-Salgado testified that on January 13, 2017, he arrived at the store a few hours after the robbery, verified that the security cameras were working, and created a recording of the relevant video footage. He then signed and dated a CD of the recording. Alicea-Salgado referred to "the daily process [by

which] managers have to verify that the security system is working" as validating a "checklist" that is provided by the store.

When the government moved to introduce the surveillance footage into evidence, Torres-Correa objected on the basis that Alicea-Salgado had not adequately explained his reference to a "checklist." Following Torres-Correa's objection, the court further questioned Alicea-Salgado regarding the checklist procedure.[2] Satisfied with his answers, the court admitted the CD containing the surveillance footage. On cross-examination, in an apparent reference to the process by which he had confirmed that the security cameras were working, Alicea-Salgado testified that he had verified the "checklist" the morning after the robbery.

The next government witness, Cotto-Carrasquillo, testified to the details of the robbery while the government played the surveillance video. The government's final witness, Díaz-Ramírez, testified about the planning of the robbery and Torres-Correa's involvement. During his testimony, the government again played the surveillance footage, and Díaz-Ramírez described what happened and identified Torres-Correa in the video. Díaz-Ramírez also acknowledged that he was testifying pursuant to a cooperation

---

[2] Alicea-Salgado elaborated: "the checklist specifies if the system is working properly or not, and that is done through the observation of the monitors, like I specified before." Alicea-Salgado also explained that he had verified that all twenty-three of the store's cameras were working properly.

agreement and that he had pleaded guilty to several other crimes set forth in the same indictment, including a robbery at a Subway restaurant and other robberies and a carjacking. He did not, however, discuss the details of these other crimes in his direct examination.

On cross-examination, Torres-Correa's counsel asked Díaz-Ramírez whether, as part of his cooperation, he had provided information to the government about the charges in the indictment to which he had pleaded guilty. Díaz-Ramírez replied that he had. In particular, he testified about providing the government with information about the CVS robbery and the Subway robbery, which was also set forth in the indictment but was a separate count that did not involve Torres-Correa. Regarding the Subway robbery, Díaz-Ramírez stated that he "didn't see all of the details" of this robbery but saw that his accomplices had "jumped over the counter in order to open the cash registers."

Upon hearing this testimony, Torres-Correa sought to impeach Díaz-Ramírez by introducing a recorded interview between Díaz-Ramírez and the FBI. Torres-Correa claimed that, in this video, Díaz-Ramírez had told FBI agents that "he didn't see anything" during the Subway robbery because he was "far away" (i.e., outside of the restaurant), thus purportedly contradicting Díaz-Ramírez's trial testimony that he had seen his accomplices jump over the counter during the robbery.

The government objected to the introduction of the video. It argued that Díaz-Ramírez's statements were not inconsistent, and that -- even if they were inconsistent -- the Subway robbery was a collateral matter of little importance to the case. The court sustained the objection and excluded the video, finding that it had no impeachment value. The court noted that "[e]ven if we set aside the fact that this is about another offense that is not the offense that [Torres-Correa is] on trial for, the fact is that [Díaz-Ramírez] stated upfront that he wasn't inside the Subway when the robbery took place." It continued: "the inconsistency is really too vague, because . . . the first time [sic] thing he said upfront is that he couldn't see well and he couldn't see all the details . . . . It's just a matter of degree."

Torres-Correa also sought the court's permission to cross-examine Díaz-Ramírez about his mental health history, noting that Díaz-Ramírez had reported a schizophrenia diagnosis to the probation department. The court ruled that it would prohibit this line of questioning in the absence of a medical expert. Elaborating, the court said that it was inappropriate for Torres-Correa's counsel and Díaz-Ramírez to "talk[] about medical facts" and form "a medical hypothesis of what schizophrenia is and fit[] it into [the] defense" without the testimony of a medical expert. Since Torres-Correa did not have a medical expert, the court prohibited the line of questioning.

At the close of the government's case, Torres-Correa moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The district court denied the motion. Torres-Correa did not present any witnesses.

The jury found Torres-Correa guilty on both counts. He was sentenced to one hundred and thirty-five months of incarceration. This appeal followed.

## II.

### A. Hobbs Act Robbery as a Crime of Violence

Torres-Correa argues that Hobbs Act robbery is not a crime of violence for purposes of § 924(c), and, thus, the court erred in denying his motion to dismiss the firearms offense (Count VI). As relevant here, § 924(c)(1)(A) applies to "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."[3] Subsection 924(c)(1)(A)(ii) requires a minimum sentence of seven years "if the firearm is brandished" during commission of the crime of violence. Section 924(c)(3)(A) defines "crime of violence" as a felony that "has as an element

---

[3] The fact that Torres-Correa did not himself carry a firearm during the robbery is irrelevant because "the defendant does not need to have carried the gun himself to be liable under § 924(c)." United States v. Flecha-Maldonado, 373 F.3d 170, 179 (1st Cir. 2004).

the use, attempted use, or threatened use of physical force against the person or property of another."[4]

Torres-Correa's claim that Hobbs Act robbery is not a crime of violence for purposes of § 924(c)(3)(A) is a nonstarter. It is settled law in this Circuit that Hobbs Act robbery categorically constitutes a crime of violence. United States v. García-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018) ("[W]e . . . hold that because the offense of Hobbs Act robbery has as an element the use or threatened use of physical force capable of causing injury to a person or property, a conviction for Hobbs Act robbery categorically constitutes a 'crime of violence' under section 924(c)'s force clause.").

Torres-Correa asks us to "reconsider[]" that precedent. Of course, our panel cannot do so. United States v. Holloway, 499 F.3d 114, 118 (1st Cir. 2007) ("[I]t is axiomatic that new panels are bound by prior panel decisions in the absence of supervening authority."). Given the absence of any supervening authority from

---

[4] Section 924(c)(3)(B) contains another definition for "crime of violence" -- a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Supreme Court has declared that subsection to be unconstitutionally vague. United States v. Davis, 139 S. Ct. 2319, 2336 (2019). However, Davis did not affect the continued viability of the § 924(c)(3)(A) definition. See United States v. Hernández-Román, 981 F.3d 138, 146 (1st Cir. 2020).

the Supreme Court or an en banc panel, the district court did not err in refusing to dismiss the § 924(c)(3)(A) charge.

## B. Surveillance Video

Torres-Correa claims that the district court erred by admitting surveillance footage of the robbery "without proper authentication." Specifically, he argues that the footage was not properly authenticated because the government did not introduce the "checklist" referenced by Alicea-Salgado, and that Alicea-Salgado lacked the personal knowledge necessary to authenticate the footage because (1) he was not present during the robbery, and (2) he did not view the footage until several hours after the robbery was completed. We review the district court's decision to admit evidence for abuse of discretion. United States v. Vázquez-Soto, 939 F.3d 365, 373 (1st Cir. 2019).

Rule 901(a) of the Federal Rules of Evidence states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In applying this rule, the district court must evaluate "whether there is 'enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be.'" United States v. Blanchard, 867 F.3d 1, 6 (1st Cir. 2017) (quoting United States v. Paulino, 13 F.3d 20, 23 (1st Cir. 1994)). Rule 901(b) provides a non-exhaustive list

of methods sufficient to authenticate evidence, including testimony from a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). A witness with knowledge may be "either a custodian or a percipient witness." Blanchard, 867 F.3d at 5 (quoting Paulino, 13 F.3d at 23). "This standard does 'not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity.'" Id. (quoting United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994)).

Alicea-Salgado's testimony that he used a "checklist" referred to the store's process for verifying that its security system was working properly. When asked whether he "reviewed . . . the checklist for that day?" Alicea-Salgado responded "[y]es," and noted that he found "[t]hat the surveillance system was working completely." He also testified that he checked that the system was working by first verifying that all of the store's twenty-three security cameras were visible on its security monitor, and then by making recordings of the relevant security footage after confirming that the areas in which the robbery took place had been captured by the cameras.

Thus, after confirming that the security cameras were working, Alicea-Salgado personally viewed the surveillance system footage shortly after the robbery and created the recording that was submitted into evidence. See Hitt v. Connell, 301 F.3d 240,

- 10 -

250 (5th Cir. 2002) (affirming the trial court's admission of audio recordings where "[b]oth deputies who recorded [the] statements testified about how they made the recordings"). Torres-Correa provides no legal authority to support his claim that Alicea-Salgado's mention of a "checklist" necessarily required the government to produce a physical document containing a checklist, as opposed to his testimony that he followed the procedures outlined above.[5] Nor has Torres-Correa supported his claim that Alicea-Salgado could not authenticate the video because he was not present during the robbery.[6]

Finally, even if Alicea-Salgado's testimony had not been sufficient to authenticate the video (and it clearly was), the government's other witnesses, Cotto-Carrasquillo and Díaz-Ramírez,

---

[5] It is not clear from the record whether a physical document exists that memorializes the procedure followed by Alicea-Salgado. However, even if such a physical checklist does exist, it would not change the fact that the steps Alicea-Salgado performed were sufficient to support a finding that the video footage "is what it is claimed to be." Fed. R. Evid. 901(b)(1).

[6] Torres-Correa similarly argues that Alicea-Salgado lacked the personal knowledge to authenticate the footage because the checklist "was not done by him." While Torres-Correa is correct that a different CVS employee verified the checklist the night prior to the robbery, this argument disregards Alicea-Salgado's testimony on cross-examination that he verified the checklist again shortly after the robbery. And regardless of whether or not Alicea-Salgado's verification that morning is properly characterized as using the "checklist," his actions were still sufficient under Rule 901(b)(1), and the fact that a different employee completed the checklist before the robbery is of no significance for the authentication determination of the court.

were present during the robbery and recalled the events depicted in the video as it played, further supporting the authenticity of the footage. See Blanchard, 867 F.3d at 7 (noting that even if "evidence is admitted prematurely, a new trial is not warranted when later testimony cures the error") (quoting United States v. Espinal-Almeida, 699 F.3d 588, 609 (1st Cir. 2012)).

Thus, the court did not abuse its discretion in determining that Alicea-Salgado's testimony that he viewed and verified the surveillance footage was sufficient to allow a reasonable person to "determin[e] that the evidence is what it purports to be." Blanchard, 867 F.3d at 6 (quoting Paulino, 13 F.3d at 23).

## C. Cross-Examination

Finally, Torres-Correa challenges the court's decision to exclude impeachment evidence and a line of questioning regarding Díaz-Ramírez, the government's cooperating witness and a co-participant in the robbery. Specifically, Torres-Correa challenges the exclusion of a video of Díaz-Ramírez's interview with the FBI and defense counsel's questions regarding Díaz-Ramírez's schizophrenia diagnosis. These two evidentiary claims are also subject to review for abuse of discretion. See Vázquez-Soto, 939 F.3d at 373.

### 1. FBI Interview

Torres-Correa asserts that the district court abused its discretion by refusing to admit a video of Díaz-Ramírez's interview with the FBI because it contradicted Díaz-Ramírez's trial testimony. Specifically, when asked on cross-examination about the robbery of a Subway restaurant, Díaz-Ramírez said that he "didn't see all the details," but saw "when they jumped over the counter in order to open the cash registers." However, the video interview purportedly showed that Díaz-Ramírez had previously told FBI agents that he "didn't see anything." Torres-Correa argued that this inconsistency was relevant to Díaz-Ramírez's "perception of things," and added that "[w]hat he perceives and what he doesn't perceive is critical to his credibility." The government argues that the district court properly excluded the video because Díaz-Ramírez's statements were not truly inconsistent and that, even if they were, any such inconsistency would have been a "collateral" matter for which Torres-Correa cannot introduce extrinsic evidence.

In excluding the FBI video, the district court found that the purported inconsistency was "just a matter of degree," and "too vague" to have impeachment value. From this exchange, it appears that the district court may have believed there was no inconsistency in Díaz-Ramírez's statements at all. However, even assuming that the court acknowledged that there might be a minor

inconsistency, it was well within the court's discretion to exclude the video. Playing the FBI interview would have required immersion in the details of an incident that was far removed from the merits of Torres-Correa's case, which would have risked confusing the jury and wasting time. See United States v. Beauchamp, 986 F.2d 1, 4 (1st Cir. 1993) (extrinsic impeachment evidence was properly excluded as collateral because its "marginal relevance" to the witness's bias or motive to testify falsely would be outweighed by the "time and effort" required to present the testimony).

Although Torres-Correa argues that the purported inconsistency goes to Díaz-Ramírez's credibility, this argument misses the point of our case law regarding collateral matters. The problem with introducing the FBI video is not that it would have been irrelevant to Díaz-Ramírez's credibility. Rather, the problem is that the video's limited relevance to Díaz-Ramírez's credibility was insufficient to outweigh the danger it posed of confusing the jury and causing delay. See United States v. Mulinelli-Navas, 111 F.3d 983, 989 (1st Cir. 1997) (finding no abuse of discretion in the district court's decision to exclude testimony that was relevant to a witness's credibility, but only on a matter "immaterial" to the merits of the case); cf. United States v. Moore, 923 F.2d 910, 913 (1st Cir. 1991) (recognizing the district court's broad discretion to prohibit cross-examination that would introduce into the case collateral matters

that could confuse the jury, even if such examination is relevant to a witness's credibility or perception).  The determination of whether a matter is collateral is "analogous to Rule 403's relevancy balancing test, which calls for relevant evidence to be excluded when its 'probative value is substantially outweighed'" by considerations such as confusing the issues, misleading the jury, or wasting time.  United States v. Catalán-Roman, 585 F.3d 453, 469 (1st Cir. 2009) (quoting Fed. R. Evid. 403).

There was no abuse of discretion in the district court's decision to exclude the video.

### 2.  Mental Health Evidence

Lastly, Torres-Correa argues that the court abused its discretion when it prohibited his counsel from questioning Díaz-Ramírez about his schizophrenia diagnosis.  Torres-Correa argued that topics such as Díaz-Ramírez's history of medication and compliance with his schizophrenia treatment would be relevant to Díaz-Ramírez's perceptive abilities.  For example, Torres-Correa contended that "[i]f [Díaz-Ramírez] goes to the hospital and he has begun a treatment and he has not followed up with the treatment, his perception may be affected."  The Court rejected this line of inquiry, noting that Torres-Correa was seeking to elicit "a medical conclusion" from a lay witness who could not provide answers of scientific value.  As the court remarked to Torres-Correa's counsel, "[y]ou don't have any scientific basis

for your question; nor does he, as a patient, have the knowledge to give an answer that has probative value. If you had an expert there, it would be a different story, because the expert would come forward with an explanation that brings light to the issue of the particular mental illness that you're probing into . . . . As it stands now, this has no probative value."

A witness's mental health may certainly be relevant for the jury to consider in evaluating the reliability of his or her testimony. See United States v. Butt, 955 F.2d 77, 82-83 (1st Cir. 1992). But the trial court did not preclude questioning on Díaz-Ramírez's schizophrenia based on relevance. Rather, the trial court determined that questioning Díaz-Ramírez about his schizophrenia would not be probative unless an expert witness were available to testify regarding how schizophrenia affects a person's perceptive abilities.

This determination was well within the discretion of the district court. Under Federal Rule of Evidence 701(c), a lay witness (like Díaz-Ramírez) cannot testify to "scientific, technical, or other specialized knowledge." Rather, an opinion based on scientific (hence, psychiatric) knowledge may only be

given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.[7]

There was no abuse of discretion in the court's decision to condition cross-examination about Diaz's mental health history on the presentation of an expert witness.

Affirmed.

---

[7] Torres-Correa briefly attempts to reframe this argument as a Confrontation Clause violation.  Because he did not raise this argument at trial, it is subject to plain error review.  United States v. Cianci, 378 F.3d 71, 107 (1st Cir. 2004).  As discussed above, Torres-Correa has failed to show any error at all.  His Confrontation Clause argument therefore fails.